Enrique PARDO, Plaintiff,

v.

Paul HOSIER, Don Polizzi, Louis Lowery, Kent Mills, and Lt. R. Foster, Defendants.

La Carttle JONES, Plaintiff,

v.

Gayle M. FRANZEN, James W. Fairman, L.O. Lowery, Eugene Robinson, Lt. Denge Dennis and J.A. Davis, Defendants.

Nos. 80–2178, 80–2248.

United States District Court,
C.D. Illinois,
Danville Division.

June 14, 1985.

Mary Perlstein, Todd M. Tennant, Champaign, Ill., for plaintiff.

Steve Kehoe, Asst. Atty. Gen., Chicago, Ill., for defendants.

## ORDER GRANTING AND DENYING SUMMARY JUDGMENT IN PART

BAKER, Chief Judge.

This case is before the court on cross-motions for summary judgment. For the reasons stated below, summary judgment is granted for the plaintiffs in part and for the defendants in part.

In these consolidated cases, two inmates from the Pontiac Correctional Center raise five due process claims. First, the plaintiff Enrique Pardo alleges that on two separate occasions he was placed in administrative segregation improperly pursuant to Administrative Regulation 804(II)(J). Second, the plaintiff LaCarttle Jones alleges that on four separate occasions he was placed in administrative segregation improperly pursuant to Ad.Reg. 804(II)(C). Third, the plaintiff Jones alleges that he received three disciplinary tickets for violations of administrative regulations in September, 1980, and that the report of the hearing on each ticket failed to state an adequate summary of the evidence relied upon by the Adjustment Committee in finding the plaintiff guilty and failed to state reasons supporting the specific disciplinary action taken against him. Fourth, the plaintiff Jones alleges that the Adjustment Committee improperly refused to call a witness he requested at his Committee hearing on September 29, 1980. Finally, the plaintiff Jones alleges that he was denied his right to an impartial decision maker on April 5, 1981, when the defendant Lowery refused to disqualify himself from serving on the committee after being notified of this pending lawsuit.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, a court ordinarily must view the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir.1973).

## I.  ENRIQUE PARDO

### A.  Segregation Pending Investigation

The plaintiff Pardo alleges that on two occasions, first in May, 1980, and again in June, 1981, he was segregated on investigative status without explanation and without notice of the charges or allegations which were under investigation.  When Pardo was confined to the holding unit, he was told only that he was being placed on investigative status and that the investigation would last no more than thirty days.  This issue is identical to the issue raised in *Hewitt v. Helms*, 459 U.S. 460[, 103 S.Ct. 864, 74 L.Ed.2d 675] (1983): what limit does the Due Process Clause of the Fourteenth Amendment place on the authority of prison administrators to remove inmates from the general population and to confine them to a less desirable location for administrative reasons?

In *Hewitt*, the Court first noted the limits on the interests protected by the Fourteenth Amendment:

> While no State may 'deprive any person of life, liberty or property without due process of law' it is well settled that only a limited range of interests fall within this provision.  Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States. *Meachum v. Fano*, 427 U.S. 215, 223–227 [96 S.Ct. 2532, 2537–2539, 49 L.Ed.2d 451] (1976).

*Hewitt*, 459 U.S. at 466[, 103 S.Ct. at 869]. The Court further concluded that administrative segregation is the sort of confinement inmates should reasonably anticipate receiving at some point in their incarceration, and that sort of confinement does not invoke an interest independently protected by the Due Process Clause:

> [A]s long as the conditions or degree of confinement to which the prisoner is subject is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.  *Montanye v. Haymes*,

427 U.S. 236, 242 [96 S.Ct. 2543, 2547, 49 L.Ed.2d 466] (1976).  *See also Vitek v. Jones*, 445 U.S. 480, 493 [100 S.Ct. 1254, 1263, 63 L.Ed.2d 552] (1980).

459 U.S. at 468[, 103 S.Ct. at 869]. Further, "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Id.*

However, the Court observed a state may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures. *Hewitt*, 459 U.S. at 469[, 103 S.Ct. at 870]. The Court concluded that the repeated use of "explicitly mandatory language" by Pennsylvania in connection with requiring "specific substantive predicates" indicated that Pennsylvania had created a protected liberty interest for an inmate in continuing to reside in the general prison population:

> Nonetheless, in this case the Commonwealth has gone beyond simple procedural guidelines.  It has used language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed ... and that administrative segregation will not occur absent specified substantive predicates—viz., "the need for control," or "the threat of a serious disturbance." ... [W]e are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.

*Hewitt*, 459 U.S. at 471–72[, 103 S.Ct. at 871].

In the present case, Pardo was twice confined to a segregation holding unit pending investigation pursuant to Ad.Reg. 804(II)(J).  Ad.Reg. 804(II)(J) provides in relevant part that:

> 1.  It is recognized that incidents occur which, *in the interest of institutional security and safety*, require that a resident be removed from the general

population and placed in a holding unit pending the completion of an investigation. As the holding unit functions in the same manner as a segregation unit (except that single celling is not required in the holding unit), a resident *must* be provided with the *same* procedural safeguards and services as are required by this regulation relative to placements, conditions and services in a segregation unit.

2. A resident disciplinary report *must* be prepared and the appropriate hearing before the institutional Adjustment Committee *must* be held within the 72–hour guideline. The report and hearing should provide the resident with *as much information as possible* regarding the incident which resulted in his/her placement in a holding unit. It is *not* necessary that information which would be a detriment to the investigative process be provided to the resident; however, sufficient evidence *must* be provided so that the resident understands the reason for placement on investigative status and the general nature of the allegations or charges under investigation. (Emphasis added.)

■ Ad.Reg. 804(II)(J) uses similar "mandatory language" in connection with requiring "specific substantive predicates" as did the Pennsylvania regulations at issue in *Hewitt.* The Illinois regulation uses mandatory language requiring that certain procedures "must" be employed, and that administrative segregation will not occur absent a specified substantive predicate— viz., "in the interest of institutional security and safety." Consequently, the court concludes that Ad.Reg. 804(II)(J) creates a

liberty interest in continuing to reside in the prison's general population.[1]

This conclusion is consistent with the Seventh Circuit's approach in *Arsberry v. Sielaff,* 586 F.2d 37 (7th Cir.1978):

Meachum [*v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) ] make it clear that the Supreme Court looks primarily to state law as the source of prisoners' liberty interests. Essentially a plaintiff must demonstrate a justifiable expectation that he will not be deprived of a benefit absent the occurrence of specified events. *Meachum,* 427 U.S. at 226–27 [96 S.Ct. at 2539]; *Montanye,* 427 U.S. at 242 [96 S.Ct. at 2547].

The question then is what is sufficient to create the necessary justifiable expectation.... In essence, prisoners must show some restriction upon the prison officials' discretion to remove the benefit sought. *Lombardo v. Meachum,* 548 F.2d 13 (1st Cir.1977). In *Meachum* and *Montanye,* the court indicated that the states could create the necessary entitlements "by statute, by rule or regulation, or by interpretation of their own constitutions". *Meachum,* 427 U.S. at 229 [96 S.Ct. at 2540].

*Id.* at 46.

"Explicitly mandatory language" is but one way of showing "some restriction upon the prison officials' discretion to remove the benefit sought." A justifiable expectation that a benefit will not be withheld "absent the occurrence of specified events" is another way of stating that the benefit will not be denied "absent specified substantive predicates." Consequently, under either approach, Ad.Reg. 804(II)(J)

---

1. Other courts have approached the question in similar fashion, but with differing results. *Compare Wright v. Enomoto,* 462 F.Supp. 397 (N.D.Cal.1976), *aff'd memorandum* 434 U.S. 1052[, 98 S.Ct. 1223, 55 L.Ed.2d 756] (1978) (inmate had interest, conferred by statewide regulation and protected by due process, in not being confined in maximum security segregation for administrative reasons unless found, for clearly documented reasons, to come within standard set by state rules) *with Love v. Duck-*

worth, 554 F.Supp. 1067, 1070 (N.D.Ind.1983) (inmates had no legitimate expectation that an offender would remain in general population absent a finding of particular events since the procedure in Indiana does not restrict the discretion of officials to place offenders in administrative segregation only after particular events). *See also Hughes v. Rowe,* 449 U.S. 5, 16–17[, 101 S.Ct. 173, 179, 66 L.Ed.2d 163] (1980) (White, J. concurring).

creates a protected liberty interest for an inmate in continuing to reside in the general population.

■ Once the existence of a liberty interest is ascertained by reference to state law, the task of defining the procedural protections which attach to that interest is wholly a matter of federal constitutional law. *Shango v. Jurich*, 681 F.2d 1091, 1097–98 (7th Cir.1982). Consequently, the procedures set out in the administrative regulations do not state the federal constitutional requirements of due process as the plaintiff insists. In order to meet the minimum requirements of procedural due process, the defendants "were obligated to engage only in an informal, non-adversary review of the information supporting [the plaintiff's] administrative confinement, including whatever statement [the plaintiff] wished to submit, within a reasonable time after confining him to administrative segregation." *Hewitt v. Helms*, 459 U.S. at 472[, 103 S.Ct. at 872]. "An inmate must merely receive *some notice* of the charges against him and an *opportunity to present his view* to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476[, 103 S.Ct. at 874] (emphasis added).

On May 26, 1980, Pardo was placed on investigative status. He received a disciplinary report which read: "A.R. Sec J. I am reporting the above resident under Sec J which will be investigate [sic] thru inter[nal] affairs office." On May 28, 1980, the plaintiff was brought before the Adjustment Committee. The Committee Summary states in its entirety, "A.R. 804II–Section J. Resident is assigned to holding unit pending by internal affairs to be completed within 30 days."

Similar reports and summaries were issued to the plaintiff in June, 1981. On June 11, 1981, the plaintiff was placed on investigative status and received a disciplinary report, which read: "A.R. Sec II J. The above resident is pending investigation and invest[igation] thru internal affair[s] office. This will last for [a] period of thirty days or RDR will be written." Also on June 11, 1981, the plaintiff was brought before the Adjustment Committee. The Committee Summary states: "Section J. Assigned to segregation under provision of AR 804 Sec[tion] J. To be investigated by internal affairs. Investigation not to exceed 30 days."

■ Clearly, the defendants failed to provide the plaintiff with the minimum requirements of due process. The defendants failed to provide the plaintiff with any notice of either the charges against him or the matter under investigation and thereby deprived him of an opportunity to present his views. Moreover, the court need not consider what specific process was due prior to *Hewitt*, since the defendants should have known that some process was due pursuant to *Meachum v. Fano*, 427 U.S. 215[, 96 S.Ct. 2532, 49 L.Ed.2d 451] (1976), and failed to provide any process at all. *See Hewitt v. Helms*, 459 U.S. at 476[, 103 S.Ct. at 874].

B. Good Faith Immunity

■ The defendants advance the defense of good faith immunity. The Supreme Court held in *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19[, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982) that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court set out the procedure for determining whether an official is entitled to immunity:

On summary judgment, the judge appropriately may determine, not only the current applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshhold immunity question is resolved, discovery should not be allowed.

If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew or should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Harlow v. Fitzgerald,* 457 U.S. at 819[, 102 S.Ct. at 2738]. *See also Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982).

Aside from *Hughes v. Rowe,* 449 U.S. 5[, 101 S.Ct. 173, 66 L.Ed.2d 163] (1980) the court has not found any cases dealing with administrative segregation or Administrative Regulation 804(II)(J).[2] However, the absence of a Seventh Circuit opinion specifically holding that Ad.Reg. 804(II)(J) creates a liberty interest requiring prison officials to provide inmates with procedural due process, does not necessitate the conclusion that "the law" was not "clearly established" at the time of the events in issue.

By May, 1980, the defendants should have been aware of the consequences of the Supreme Court's decision in *Meachum v. Fano,* 427 U.S. 215[, 96 S.Ct. 2532, 49 L.Ed.2d 451] (1976) upon which this court relies today in concluding that Administrative Regulation 804(II)(J) created a protected Fourteenth Amendment liberty interest.[3] In addition, by May, 1980, the law was clearly established that Illinois Department of Corrections Administrative Regulations would create a protected Fourteenth Amendment liberty interest where the language of a specific administrative regulation demonstrated a justifiable expectation that a benefit granted inmates by the regulations would not be withheld without due process. *See Arsberry v. Sielaff,* 586 F.2d 37, 46 (7th Cir.1978). Of course, not all Illinois prison administrative regulations create protected liberty interests. However, opinions of the Seventh Circuit announced subsequent to *Meachum v. Fano,* and prior to the incidents involved in this case, applied *Meachum* and concluded that various Illinois statutes, prison regulations, or policies did, or did not, create protected liberty interests.[4] The court concludes that the defendants are not entitled to the qualified good faith immunity defense.

Consequently, the plaintiff Pardo's motion for summary judgment shall be granted on his administrative segregation claim. The defendants' motion for summary judgment shall be denied.

## II. LACARTTLE JONES

### A. Segregation Pending Adjustment Committee Hearing.

Plaintiff LaCarttle Jones was charged four times with violations of Administrative Regulations, and all four times was immediately removed to a segregation hold-

---

**2.** *Hughes* was essentially a pleading case rather than an exposition of the substantive constitutional issues invoked. *See Hewitt,* 459 U.S. at 469, n. 5[, 103 S.Ct. at 870, n.5].

**3.** The Supreme Court has recently reaffirmed the principles set forth in *Meachum v. Fano. See Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

**4.** *See e.g. Arsberry v. Sielaff,* 586 F.2d 37 (7th Cir.1978) (recognizing that a prisoner may have due process rights as a result of entitlements created by prison regulations, but remanded to the district court to consider and determine whether Administrative Regulation 807 creates a state law entitlement deserving of due process protection); *Bono v. Saxbe,* 450 F.Supp. 934 (E.D.Ill.1978) *aff'd* 620 F.2d 609 (7th Cir.1980)

(Marion policy statement MI–7300.80(A) stating that placement in the control unit is based on an inmate's demonstrated inability to adjust to an open institutional setting, gives rise to a protected liberty interest that only upon some proof of non-conformity will an inmate be placed in the control unit). *But see Durso v. Rowe,* 579 F.2d 1365 (7th Cir.1978); (Ill.Rev. Stat. ch. 38, § 1003–8–7(e), providing that certain procedures must be followed in prisoner disciplinary cases applies only when the change in prison assignment is for disciplinary purposes and does not prohibit a change in assignment for non-disciplinary reasons and does not limit the discretion of prison officials in making transfer decisions).

ing unit prior to receiving a hearing on the charge. Plaintiff Jones, like plaintiff Pardo, alleges that this form of administrative segregation violates the due process clause of the United States Constitution.

■ Administrative Regulation 804(II)(C)(2) of the Illinois Department of Corrections states:

2. The shift supervisor *shall* determine whether or not it is necessary to place the resident in temporary confinement status pending a disciplinary hearing. *Such a decision shall be based on the degree of aggressiveness exhibited by the resident, the degree of threat posed to the safety and security of the institution, and/or the resident's need for safekeeping to protect him/her from injury.*

The state again uses "explicit mandatory language" in combination with a "specified substantive predicate" in prescribing the conditions under which the inmate may be confined to a segregation holding unit pending an Adjustment Committee hearing. *Supra,* p. 696–97. Consequently, the court concludes that Ad.Reg. 804(II)(C) creates a protected liberty interest in continuing to reside in general population. *Cf. Isaac v. Jones,* 529 F.Supp. 175, 181 (N.D.Ill.1981) (Ad.Reg. 804–A(II)(C) provides the predicate necessary for triggering due process by limiting the circumstances in which an inmate may be transferred from disciplinary segregation to controlled segregation); *Williams v. Franzen,* 499 F.Supp. 304, 305 (N.D.Ill.1980) (Illinois prisoners have a protected liberty interest in not being placed in disciplinary segregation absent a finding of major misconduct).

■ However, the plaintiff's allegation that on all four occasions in issue the shift supervisor *incorrectly* placed the plaintiff in administrative segregation pursuant to 804(II)(C), if true, does not necessarily indicate that the plaintiff's liberty interest was deprived without due process. Rather, as the Court of Appeals stated in *Shango v. Jurich:*

Although the existence of a liberty or property interest may be ascertained by reference to state law, once such an interest is identified, the task of defining the procedural protections which attach to that interest is fully a matter of federal constitutional law. . . . To be sure, state procedural protections are not ignored. Rather, once it is determined what process is due to the individual before he can be deprived of the specific liberty or property interest by the state, state procedures are scrutinized to see if they comport with the federal procedural due process requirements. However, state procedural protections cannot define what process is due. The Fourteenth Amendment's limitation on state action would be illusory indeed if state practices were synonymous with due process.

681 F.2d 1091, 1097–98 (7th Cir.1982).

Furthermore, in *Hewitt v. Helms,* the Supreme Court noted the intuitive nature of decisions required of prison officials assessing the seriousness of threats to institutional security and stated that trial type procedural safeguards would not appreciably aid in making those decisions:

As we said in *Rhodes v. Chapman,* 452 U.S. 337, 349 n. 14 [101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59] (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of the prison administrators." In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; indeed, they must consider the character of the inmates confined in the institution, recent and long standing relations between prisoners and guards, prisoners *inter se,* and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potential disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely sub-

jective evaluations and on predictions of future behavior," *Connecticut Board of Pardons v. Dunschat,* 452 U.S. 458, 464 [101 S.Ct. 2460, 2464, 69 L.Ed.2d 158] (1981); indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution. Owing to the central role of these types of intuitive judgments, a decision that an inmate or group of inmates represents a threat to the institution's security would not be appreciably sponsored by the trial type procedural safeguards suggested by the respondent. 459 U.S. at 474[, 103 S.Ct at 872] (footnote omitted). The court concluded that "an informal, non-adversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him." *Id.* at 476[, 103 S.Ct. at 874].

Initially, the court concludes that the plaintiff's allegation that the supervisor "incorrectly" placed the plaintiff in administrative segregation pursuant to Ad.Reg. 804(II)(C) is not supportive of a denial of due process. *Hewitt v. Helms* clearly indicates that as long as the prison administration "reviews the charges and then available evidence against the prisoner [within a reasonable time], the Due Process Clause is satisfied." 459 U.S. at 476[, 103 S.Ct. at 874].

■ However, the defendants *did not* comply with the minimum due process requirements of the Fourteenth Amendment as set forth in *Hewitt v. Helms.* After each incident in issue, a shift supervisor determined that the plaintiff Jones should remain in segregation pending his disciplinary hearing. The defendants notified the

plaintiff of the charges against him and provided him with an Adjustment Committee hearing pursuant to Ad.Reg. 804. However, based upon the general requirements of *Hewitt v. Helms* and the specific language of Ad.Reg. 804(II)(C), the shift supervisor was required to provide the plaintiff an opportunity to present his views before the shift supervisor made his decision on the plaintiff's continued confinement in administrative segregation.[5]

■ Unlike the Pardo situation, however, the court concludes that the defendants *are entitled* to qualified good faith immunity as to plaintiff Jones. The court first notes that the procedural due process requirements of Ad.Reg. 804(II)(C) apparently have never been addressed by a court of this circuit.[6] Although the defendants should have known that under *Meachum v. Fano,* 427 U.S. 215[, 96 S.Ct. 2532, 49 L.Ed.2d 451] (1976), Ad.Reg. 804(II)(C) creates a protected liberty interest, the defendants provided the plaintiff with substantially all the requirements of due process which *Hewitt* requires. *Compare Hewitt,* 459 U.S. at 476[, 103 S.Ct. at 874] with Ad.Reg. 804(II)(C). However, the defendants could not have reasonably known that the failure of the *shift supervisor* rather than the Adjustment Committee to provide the plaintiff the opportunity to present his views prior to the decision to continue the plaintiff's confinement in administrative segregation violated the plaintiff's constitutional rights.

As the Supreme Court noted in *Hewitt v. Helms:*

> *Wolff* [*v. McDonnell,* 418 U.S. 539, 563–572, 94 S.Ct. 2963, 2978–2982, 41 L.Ed.2d 935 (1974)] required that inmates facing disciplinary charges for misconduct be accorded twenty-four

---

5. The defendants have not asserted that prison authorities were faced with emergency situations which outweighed the inmate's interest in a prior procedural safeguard. *See generally LaBatt v. Twomey,* 513 F.2d 641, 645–48 (7th Cir.1975); *Hayes v. Walker,* 555 F.2d 625, 633 (7th Cir.1977); *Hughes v. Rowe,* 449 U.S. 5, 11[, 101 S.Ct. 173, 177, 66 L.Ed.2d 163] (1980).

6. *But see Ra Chaka v. Nash,* 536 F.Supp. 613, 616–17 (N.D.Ill.1982) (violation of Ad.Reg. 804(C)(1) and (2) requiring shift supervisor to sign disciplinary report and authorize prehearing confinement did not violate the plaintiff's substantive due process rights where plaintiff did not allege that defendant acted arbitrary or capriciously, only that defendant acted contrary to the regulations).

hours advance notice of the charges against them; a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; the aid of a staff member or inmate in presenting a defense, providing the inmate is illiterate or the issues complex; an impartial tribunal; and a written statement of reasons relied on by the tribunal.

459 U.S. at 466, n. 3[, 103 S.Ct. at 868, n. 3]. Prior to *Hewitt v. Helms*, neither *Wolff v. McDonnell* nor its progeny gave any indication that any individual or individuals other than members of the Adjustment Committee would be constitutionally required to review the plaintiff's placement and continued confinement in segregation. Likewise, although Ad.Reg. 804(II)(C) gives rise to a protected liberty interest, 804(II)(C) itself does not give any indication that the plaintiff should be allowed to provide the shift supervisor with a statement prior to the supervisor's review of the plaintiff's placement in administrative segregation.

Therefore, the court concludes that the law prior to *Hewitt v. Helms* was not so clearly established that the defendants could fairly be said to have known that the failure of a shift supervisor to provide an inmate with an opportunity to present his views before the supervisor considered the propriety of the inmate's continued confinement in administrative segregation, although not previously identified as unlawful, was prohibited. *Harlow v. Fitzgerald*, 457 U.S. at 819[, 102 S.Ct. at 2738]. Consequently, although the plaintiff was denied a protected Fourteenth Amendment liberty interest without due process, the defendants are entitled to a good faith immunity defense. The plaintiff's motion for summary judgment shall be denied as to this claim. The defendants' motion for summary judgment shall be granted.

**B. Adequacy of Committee Summaries**

1. On September 29, 1980, Jones received three Adjustment Committee hearings for disciplinary reports issued on September 27, 1980. The three disciplinary reports were written by three correctional officers based upon a single incident which occurred on February 27, 1980. The three hearings were held consecutively and, for all practical purposes, the three summaries that were issued are identical.[7] The plaintiff alleges that the Adjustment Committee failed to give an adequate statement of the evidence relied upon in finding the plaintiff guilty and failed to state reasons supporting the specific disciplinary action taken against him. To provide an inmate with the minimum requirements of due process, the Adjustment Committee must provide the inmate with a " 'written statement by the fact finders as to the evidence relied upon and reasons' for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 564[, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935] (1974), cited in *Aikens v. Lash*, 514 F.2d 55, 60 (7th Cir.1975), vacated on other grounds, 425 U.S. 947[, 96 S.Ct. 1721, 48 L.Ed.2d 191], reinstated as modified on other grounds, 547 F.2d 372 (7th Cir.1976). *See also Heyes v. Walker*, 555 F.2d 625, 631 (7th Cir.1977); *Redding v. Fairman*, 717 F.2d 1105, 1114–16 (7th Cir.1983). As the Supreme Court stated in *Wolff v. McDonnell*, the considerations underlying this requirement are the protection for a prisoner from collateral consequences of a disciplinary action and encouragement of fair administrative decision making:

Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceed-

---

**7.** The first summary states: "Based on resident's statement and officer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a general disturbance." The second and third summaries state identically: "Based on resident's and offi-

cer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a disturbance." *See* Plaintiffs' Exhibits G–1 through G–3, and Defendants' Exhibits 7, 9, and 11.

ing. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been averred, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

418 U.S. at 565[, 94 S.Ct. at 2979]; *Hayes v. Walker,* 555 F.2d at 631–32; *Redding v. Fairman,* 717 F.2d at 1114.

In *Hayes v. Walker,* the Court of Appeals rejected as inadequate an Adjustment Committee summary which stated: "Based on our review of the violation report and the report by the special investigator it is our motion that we find Mr. Hayes guilty as charged. We find that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts." The Committee report to inmate Hayes stated: "The committee's decision is based on the violation report as written and upon the report by the special investigator which during your absence was made part of the record." 555 F.2d at 631–33 and n. 1; *Redding v. Fairman,* 717 F.2d at 1114–15.

In *Redding v. Fairman,* the Court of Appeals rejected as inadequate summaries based "on all available evidence" or "all evidence presented." The Court stated:

"The phrases 'based on all available evidence' or 'all evidence presented' are conclusory; they do not disclose what evidence forms the bases of the Committee rulings. The Committee apparently gives credence to the resident disciplinary report in almost every case, but does not admit to doing so in its summaries. Also, no reasons are given for discounting the inmates' contradictory evidence."

717 F.2d at 1115. The Court further stated the distinction between constitutionally adequate and inadequate summaries:

The line between constitutional adequacy and inadequacy is a fine, but important one. When the Committee writes "based on all available evidence the resident is guilty," no agency or court can discern the basis for the Committee's rulings. If, however, the Committee writes "resident is lying," ... *or another statement establishing the evidence underlying its decision,* then the inmate is protected from a mischaracterization of the disciplinary action when it comes under review.

717 F.2d at 1116 (emphasis added).

■ Unlike the summaries at issue in *Hayes* and *Redding,* the three summaries provided to plaintiff Jones reflect the evidence relied upon by the Adjustment Committee. The summaries indicate that the Committee concluded, as a factual matter, that the plaintiff caused a general disturbance by cursing and making improper and disrespectful remarks to an employee. The summaries indicate that the Committee's conclusion was based upon the resident's statements (which were summarized on the summary sheets) and the officer's report (which had been read into the record in the presence of the plaintiff). Although the summaries provided plaintiff Jones could have been more detailed, the plaintiff was provided with the minimum requirements of due process. The summaries sufficiently establish the evidence underlying the Committee's determination of the plaintiff's guilt and thereby adequately protect the plaintiff against collateral consequences of a subsequent review based upon mischaracterization of the disciplinary action taken by the Pontiac administration.

■ Additionally, the three summaries at issue in the present case are procedurally adequate for the same reasons two of eighteen summaries were found adequate in *Redding:*

Evaluating the form summaries as a whole by combining the sections "Record of Proceedings" with the sections "Basis for Decision/Evidence Relied Upon" rescues two of the eighteen summaries from constitutional inadequacy. In the section "Record of Proceedings" for plaintiff Jones, the Committee noted in part: "Resident states he struck resident due to he owed him money." In the section "Basis for Decision/Evidence Relied Upon," the Committee noted "resident's

testimony given." Because there was no conflict between the resident disciplinary report and testimony at the Committee hearing, it can be assumed that the Committee relied on plaintiff Jones' own testimony to find him guilty. Similarly, the "Record of Proceedings" for the February 4, 1980, hearing on plaintiff Tedder states in part: "resident states he was not going to be assigned with a Black, and this is why he refused [his housing assignment]." The plaintiff thus admitted his infraction, and the "Basis for Decision" notes: "Resident's testimony given." It therefore can be assumed that the Committee relied on plaintiff Tedder's admission to find him guilty, though the summary does not so state. Accordingly, the summary for plaintiff Jones and the summary for plaintiff Tedder's February 4, 1980, hearing satisfied minimum constitutional requirements.

717 F.2d at 1115–16.

In the present case, evaluating each summary as a whole by combining the sections "Record of Proceedings" with the sections "Basis for Decision/Evidence Relied Upon" rescues these summaries from constitutional inadequacy. In the section "Record of Proceedings" on plaintiff Jones' first summary, the Committee noted in part: "Conversation was between Roberts and myself. I made remarks to Roberts after he made derogatory remarks to me." In the section "Basis for Decision/Evidence Relied Upon," the Committee noted "based on resident's statements." As in *Redding*, because there was no conflict between the resident's disciplinary report and testimony at the Committee hearing, it can be assumed that the Committee relied on plaintiff Jones' own testimony to find him guilty.

Similarly, the "Record of Proceedings" on plaintiff Jones' second summary states in part: "I only made derogatory remarks after Robinson harrassed me. He was drunk man." The plaintiff thus admitted his infraction, and the "Basis for Decision" notes: "Based on resident's statements." It therefore can be assumed that the Com-

mittee relied on the plaintiff Jones' admission to find him guilty.

The third Summary provided to the plaintiff Jones is even less detailed than those at issue in *Redding*. However, based upon the particular facts of the present case, the court concludes that this Summary is also adequate. The court notes that the three resident disciplinary reports issued to the plaintiff arose from a single incident. Although the plaintiff received three separate disciplinary hearings, the hearings were held consecutively on September 27, 1980, at approximately 2:00 p.m. The court further notes that the plaintiff received three identical, concurrent sentences of fifteen days in disciplinary segregation and thirty additional days demotion to "C" grade status. In the section "Basis for Decision" the Committee notes: "Based on resident's statements." The section "Record of Proceedings" states in part: "Officer Robinson was drunk and started making derogatory remarks to me. He was harrassing me, spitting all over me and my cell." Although the Summary does not indicate that the plaintiff admitted facts constituting the infraction, the language of the third Summary clearly indicates that the plaintiff raises the same "defense" he raised at each hearing, namely, that his improper conduct was provoked by, and in retaliation to, improper conduct of correctional officers.

Consequently, under both analyses, the Summaries at issue in the present case are constitutionally adequate for purposes of the Due Process Clause. The plaintiff's motion for summary judgment shall be denied. Summary judgment for the defendants shall be granted.

2. However, due process requires not only a written statement by the factfinders as to the evidence relied upon, but also "reasons for the disciplinary action." *Wolff v. McDonnell,* 418 U.S. 539, 564[, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935] (1974). In *Wolff,* the importance of each procedural requirement was considered in some detail, but the need for "reasons" was simply stated, without further amplification. *Id.* In *Hayes v. Walker,* 555 F.2d 625 (7th

Cir.1977), the Seventh Circuit Court of Appeals addressed this issue as follows:

> In *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir.1975), *cert. denied* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764, a case involving the adequacy of reasons for the denial of parole, this court stated that the following test was consistent with Mr. Justice White's analysis in *Wolff* of the minimum due process requirements for the revocation of a prisoner's good time credit:
>
> > In *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2nd Cir.) vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the Court said at page 934:
> >
> > > To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the Board's inferences are based . . ..

526 F.2d at 804.

> The institutional adjustment committee failed in the present case to give an adequate statement as to ... reasons for the action taken.

555 F.2d at 632–33; *United States ex rel. Speller v. Lane*, 509 F.Supp. 796, 800–01 (S.D.Ill.1981).

■ In the present action, the "disposition and/or disciplinary action" section of the three summaries are essentially identical.[8] Each summary indicates the committee's determination of the plaintiff's violation of Ad.Reg. 804(II)(A)(1), (2), (4), and (8). Each summary sentences the plaintiff to fifteen days in segregation and thirty additional days on "C" grade status. Summaries two and three indicate that their sentences run concurrent with that imposed in summary one. However, each summary is devoid of reason or explanation for the specific disciplinary action taken against the plaintiff. Under *Wolff* and *Hayes*, the plaintiff was deprived of his right to procedural due process. *Cf. Redding v. Fairman*, 717 F.2d at 1115 n. 4 (none of eighteen summaries stated reasons underlying the nature and amount of punishment imposed); *Smith v. Stoner*, 594 F.Supp. 1091 (N.D.Ind.1984) (no explanation as to the severity of sanctions imposed for findings of guilt of violations of rules); *Craig v. Franke*, 478 F.Supp. 19, 21 (E.D.Wis.1979) (well justified decision based on undisputed facts nonetheless failed to state reasons for imposing segregation). Consequently, the plaintiff's motion for summary judgment shall be granted.

### C. The Right to Call Witnesses

■ Plaintiff Jones alleges that the defendants failed to call Officer Robinson as requested by the plaintiff at his Adjustment Committee hearing on September 29, 1980. In *Wolff v. McDonnell*, the court held that "the inmate facing disciplinary proceedings should be allowed to call witnesses to present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566[, 94 S.Ct. at 2979]; *see also Baxter v. Palmigiano*, 425 U.S. 308, 321[, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810] (1976). Furthermore, "some support for the denial of a

---

**8.** The first summary states: "Guilty-violated-Administrative Regulation 804(II)(2)(A)–1, 2, 4, and 8. Segregation-fifteen days—release 10–13–80. Demotion to C grade thirty days—consecutive to previous demotion." The second summary states: "Guilty-violated-AR 804(II)(A)–1, 2, 4, and 8. Segregation-fifteen days-release 10–13–80. C grade demotion-thirty days-consecutive to previous demotion. RDR 2 to run concurrently with RDR 1 written on same day and approximate time." The third summary states: "Guilty-violated-AR 804(II)(A)–1, 2, 4, and 8. Segregation-fifteen days-release 10–13–80. C grade demotion-thirty days-concurrent to previous demotion. RDR 3 to run concurrent with RDR 2 and 1 written on same date and approximate time."

request for witnesses [should] appear in the record [enabling] a court to make [a] limited inquiry into whether the broad discretion of prison officials has been arbitrarily exercised." *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir.1977).

The defendants claim that the plaintiff received a disciplinary report containing the witness request form two days before the Adjustment Committee hearing, yet the plaintiff failed to properly request witnesses in accordance with Administrative Regulations. However, the plaintiff claims that he did not receive the disciplinary reports until *three hours* before the Adjustment Committee hearing and consequently did not have an opportunity to properly request witnesses. Obviously, this is a genuine issue of material fact and summary judgment is not appropriate at this time. Therefore, the plaintiff's motion for summary judgment shall be denied as to this issue.

### D. Impartial Decision Maker

█ On April 5, 1981, the plaintiff Jones allegedly refused to move to his assigned cell. At the Adjustment Committee hearing on April 10, 1981, Jones requested that the defendant Lowery remove himself from the Committee. Plaintiff Jones informed the Committee that defendant Lowery had been named as a defendant in this case which was pending at the time of the committee hearing. Lowery told Jones and the committee that he was unaware of this case, although he had been served with process on December 5, 1980. *See* Plaintiff's Exhibit N. The Committee, chaired by the defendant Lowery, found the plaintiff guilty of rules violations and sentenced him to seven days in segregation.

The issue of disqualification of Adjustment Committee members was addressed recently by the Court of Appeals in *Redding v. Fairman*, 717 F.2d 1105 (7th Cir. 1983):

> The Third Circuit has ruled, following Justice Marshall's concurrence in *Wolff* [*v. McDonnell*, 418 U.S. 539, 592, 94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974)]

that due process prohibits "only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decisionmaking role, in the circumstances underlying the charge from sitting on the disciplinary body". *Rhodes v. Robinson*, 612 F.2d 766, 773 (3rd Cir. 1979).... Nevertheless, we believe that circumstances other than those arising directly out of the disciplinary process may raise such doubts about the integrity of the hearing procedure and the impartiality of its participants so as to trigger due process considerations.

717 F.2d at 1113. The district court was directed "to evaluate the circumstances involved in the lawsuits and determine whether disqualification is required. Among other considerations, the district court should determine the extent of the Committee members' personal involvement in those lawsuits." *Id.*

Summary judgment is not appropriate at this time. The defendant Lowery was served with process in this case on December 5, 1980, four months prior to the Adjustment Committee hearing of April 5, 1981. *See* Plaintiff's Exhibit N. However, the court notes that substitute service was made. The Marshal's return shows he served the process on Lynette Pharris, the secretary to the Assistant Deputy Director of the Department of Corrections in Springfield, Illinois. The plaintiff has not alleged, and there is no indication that the defendant was personally aware of the pending lawsuit prior to the Adjustment Committee hearing of April 5, 1981. Therefore, at least one question of material fact remains concerning the plaintiff's claim of denial of an impartial decision maker, *i.e.*, the extent of Lowery's personal knowledge of the pendency of the suit. Consequently, the plaintiff's motion for summary judgment shall be denied.

IT IS THEREFORE ORDERED that the plaintiff Pardo's motion for summary judgment on the issue of liability on the plaintiff's due process claim concerning place-

ment in administrative segregation is granted.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment on that issue is denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment on the plaintiff Jones' due process claim concerning placement in administrative segregation is granted.

IT IS FURTHER ORDERED that the plaintiff Jones' motion for summary judgment on that issue is denied.

IT IS FURTHER ORDERED that the plaintiff Jones' motion for summary judgment on the issue of liability on the plaintiff's due process claim concerning the adequacy of Committee Summaries stating the evidence relied upon in finding the plaintiff guilty is denied.

IT IS FURTHER ORDERED that summary judgment for the defendants is granted on that issue.

IT IS FURTHER ORDERED that the plaintiff Jones' motion for summary judgment on the issue of liability on the plaintiff's due process claim concerning the adequacy of committee summaries stating the reasons for the specific disciplinary action taken against him is granted.

IT IS FURTHER ORDERED that the plaintiff Jones' motion for summary judgment on the plaintiff's remaining claims concerning the right to call witnesses and the right to an Adjustment Committee composed of impartial committee members is denied.