**Joe WOODS, Plaintiff–Appellant,**

v.

**James H. THIERET, C. Brieschke, Lieutenant D. Hasemeyer, Lieutenant Pierson, Lieutenant Conouer, Lieutenant Kenny Fults, Sergeant Patterson, Correctional Officer A. Dagner, Correctional Officer Hicks, Correctional Officer K. Hornbostel, L.J. Cariock and Harry Jackson, Defendants–Appellees.**

No. 89–2330.

United States Court of Appeals,
Seventh Circuit.

Submitted May 24, 1990.

Decided June 7, 1990 *.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs.

Joe Woods, Chicago, Ill., pro se.

Jan E. Hughes, Asst. Atty. Gen., Chicago, for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, and CUDAHY, Circuit Judges.

PER CURIAM.

Joe Woods, *pro se* plaintiff-appellant, filed a complaint under 42 U.S.C. § 1983 (together with three other inmates not parties to this appeal) while incarcerated at the Menard Correctional Institution[1] against defendants, employees of the Illinois Department of Corrections. Woods' complaint stated two claims only one of which is argued on appeal: that prison officials violated his right to due process of law when they temporarily confined him to his cell, that is, put him in "lockdown," on three separate occasions. Woods also complained that he was not fed for three days during one of the lockdowns. Upon consent of the parties, the case was referred to a magistrate for pretrial proceedings and disposition. The parties filed cross-motions for summary judgment. Magistrate

Cohn granted summary judgment in favor of defendants and dismissed the action. Woods appeals, arguing that summary judgment was improperly granted because genuine issues of material fact existed, that Illinois Department of Corrections rules, 20 Ill.Admin.Code §§ 504.40 and 504.50(b), create a liberty interest which requires due process protections and that the district court erred in disposing of the case on the basis of this court's decision in *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988).

I.

On June 14, 1986, Woods received a disciplinary ticket and was confined to his cell for six days. On June 24, 1986, defendant Hicks issued an allegedly false disciplinary ticket to Woods and confined him to his cell for one day. On June 27, 1986, defendant Hasemeyer confined Woods to his cell for three days, but allegedly issued no disciplinary ticket and did not otherwise inform Woods why he was being placed in temporary confinement. Allegedly, Woods was not fed dinner on June 27, 1986, was not fed any meals on June 28, 1986, and was not fed breakfast on June 29, 1986.

Woods argues that the district court erred in not considering his claim that he was not fed for three days in violation of his eighth amendment right to be free from cruel and unusual punishment and that genuine issues of material fact exist regarding this claim. In his complaint, Woods did not specifically allege that this was a violation of his eighth amendment rights. Woods attached to his complaint the affidavits of two inmates in neighboring cells who testified that Woods was not fed during this period, but did not otherwise argue this point in his submissions to the district court. Defendants do not address the eighth amendment issue other than to attach to their answer an affidavit in which defendant Thieret testifies that "[w]hen on 'deadlock' inmates receive meals in their cells," and an affidavit in which defendant Boulton testifies that "I know inmate Woods, but I do not recall the

1. Woods is currently incarcerated at the Pontiac    Correctional Center, Pontiac, Illinois.

specific occasion in late June which he describes in his complaint. However, I am certain I have never known of or had an inmate complain of not being fed for three days." The district court did not address the eighth amendment issue apparently because both parties gave it minimal attention. Woods argues that it was obvious that he was making an eighth amendment claim and that the district court erred in failing to address it.

We liberally construe the complaints of *pro se* litigants, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and agree with Woods that there is a genuine issue of material fact as to whether Woods was fed the three days during which he was confined to his cell. Although Woods did not use the eighth amendment "buzz words," the nature of the claim is apparent. Clearly, prison officials have a responsibility to provide inmates with a minima of food, shelter and basic necessities. *See Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989). Accordingly, we remand this portion of the case to the district court for the purpose of addressing Woods' eighth amendment claim.

## II.

Woods also argues that the district court erred in granting summary judgment on his due process claim. Woods contends that Illinois Department of Corrections rules §§ 504.40 and 504.50(b), by placing substantial limitations on the discretion of prison officials, create a liberty interest and consequently that prison officials must provide inmates with procedural due process before putting them on "lockdown." Woods claims that he received neither notice of what he had done wrong in that defendants either did not issue a disciplinary ticket or issued a false one, nor a pre-deprivation hearing before being confined to his cell. The district court rejected this argument on the authority of *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988), in which this court concluded that "Illinois' administrative and statutory provisions do not create a liberty interest [in remaining in the general population]." Woods seeks to distinguish *Cain* by arguing that *Cain* involved rules other than the ones on which he relies.

The fourteenth amendment prohibits a state from depriving a person of life, liberty or property without due process of law. U.S. Const. amend. XIV. While the due process clause does not itself create a liberty interest in remaining in the general population and out of temporary confinement, *see Hewitt v. Helms*, 459 U.S. 460, 467–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Cain*, 857 F.2d at 1143, state law may create enforceable liberty interests in the prison setting. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. ——, ——, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Thus, in deciding whether Woods' right to due process was violated, we must first look to Illinois statutes and administrative regulations to determine whether they have created a protected liberty interest. If they have, then we must determine what process is due Woods before prison officials may deprive him of that interest. *Id.* at ——, 109 S.Ct. at 1908.

Although "state statutes may create liberty interests that are entitled to the procedural protections of [the due process clause]," *Vitek v. Jones*, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980), "[t]he adoption of mere procedural guidelines ... does not give rise to a liberty interest." *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir.1987), *cert. denied*, 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988). "To create a constitutionally protected liberty interest, a state must employ 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed ... and that [the challenged action] will not occur absent specific substantive predicates.'" *Russ v. Young*, 895 F.2d 1149, 1153 (7th Cir.1990) (quoting *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871). "In other words, a liberty interest is created only where the state regulation in question contains 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome

must follow. . . .' " *Id.* (quoting *Kentucky Dep't of Corrections*, 490 U.S. at —, 109 S.Ct. at 1910). Thus, we must focus on the actual language of the rules which provide:

Section 504.40—The shift supervisor shall determine whether or not it is necessary to place the committed person in temporary confinement status pending a disciplinary hearing based on:

a) The degree of aggressiveness exhibited by the committed person;

b) The degree of threat posed to the safety and security of the facility; and/or

c) The need to place the committed person in safekeeping to protect him from injury.

Section 504.50(b)—The Reviewing Officer shall review the decision to place a committed person in temporary confinement pending a disciplinary hearing and shall have the authority to order release from or placement in temporary confinement. The decision shall be based on the factors listed in Section 504.40.

Our reading of these sections of the Illinois Administrative Code convinces us that the rules do not place sufficient substantive limits on official discretion to establish a liberty interest in avoiding temporary confinement. We recognize that the rules do use mandatory language and do adopt procedural guidelines governing the use of temporary confinement. Specifically, they mandate that the shift supervisor *shall* make the initial determination whether to place an inmate in temporary confinement; that the reviewing officer *shall* review the shift supervisor's decision; and that both the shift supervisor and reviewing officer *shall* base their respective decisions on three specific factors. This alone, however, is not sufficient to create a liberty interest triggering the procedural protections of the due process clause. *Colon v. Schneider*, 899 F.2d 660, 667 (7th Cir.1990). While the rules mandate *who* shall make the determinations and *what* shall be considered (the three substantive predicates), they do not mandate any particular outcome with regard to the substantive predicates. The language of the predicates leaves discretion with the shift supervisor and reviewing officer by requiring them to consider "the *degree* of aggressiveness exhibited by the committed person," "the *degree* of threat posed to the safety and security of the facility," and "the *need* to place the committed person in safekeeping to protect him from injury." Determinations of degree and need are discretionary and do not mandate a particular outcome. The mere fact that the rules provide specific considerations to guide the prison officials' decision as to whether to place an inmate in temporary confinement does not of itself create a liberty interest. *Russ*, 895 F.2d at 1154; *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir.1986) (holding that directive charging prison staff with using professional judgment, albeit within specific guidelines, did not create liberty interest because directive was intended to guide prison officials rather than inmates), *cert. denied*, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987).

Nor does the provision for review of the shift supervisor's decision create a liberty interest where, as here, the reviewing officer's decision, like that of the official initially placing the inmate in temporary confinement, is discretionary and subjective. *See Russ*, 895 F.2d at 1154; *see also Colon*, 899 F.2d at 667–68. Accordingly, we hold that Woods has no liberty interest in remaining in the general population and avoiding temporary confinement to his cell; consequently, Woods' temporary confinement cannot constitute a violation of his constitutional rights to due process of law.

For these reasons, we affirm the judgment of the district court granting summary judgment in favor of the defendants on the due process claim and remand the cause to the district court for consideration of Woods' claim that he was subjected to cruel and unusual punishment when he was not fed for three days while in temporary confinement.

AFFIRMED in part; REMANDED in part.