922 F.2d 843
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Colin GELFORD, Plaintiff-Appellant,
v.
Donald CLUSEN, Daniel Bertrand, David Norman, Jerome Tierney
and Patrick McQuillan, Defendants-Appellees.
 No. 90-1222.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 26, 1990.*
Decided Jan. 7, 1991.
 
 Before WOOD, JR., COFFEY and KANNE, Circuit Judges.
 
 ORDER
 I.
 A. FACTS
 
 1
 Plaintiff Colin Gelford was convicted of burglary in a Wisconsin state court and sentenced to two years imprisonment. Gelford was incarcerated at the Dodge Correctional Institute (DCI) on February 4, 1986, for assessment and evaluation concerning his placement into the Wisconsin correctional system. While at DCI, Gelford was evaluated as a "vulnerable" inmate.[1] On April 8, 1986, Gelford was transferred to the Green Bay Correctional Institute. (hereinafter GBCI). Like other new arrivals, Gelford was placed in "receiving/segregation." While in "receiving/segregation," Gelford shared a cell with Brian Holub. Holub was not a new arrival, but was placed in this cell in "unassigned/door-locked status" awaiting replacement in the general population due to problems he was having with his former cellmate. Within the six months before being placed in the same segregation cell with Gelford, Holub had been reported twice for fighting at the institution. On April 18, 1986, Gelford and Holub got into a fight during which Holub stabbed Gelford in the hand. Gelford received five stitches as a result of this incident.
 
 B. PROCEDURAL POSTURE
 
 2
 Gelford initiated a Sec. 1983 action alleging violations of the eighth and fourteenth amendments and requested the district court to let him proceed in forma pauperis. Gelford first alleged that the defendants violated his fourteenth amendment right to due process by placing him in "punitive" segregation when he was received at GBCI.[2] Gelford further maintained that his eighth amendment right to be free from cruel and unusual punishment was violated when the defendants placed him, a vulnerable inmate, in the same cell as Holub who was "a known violent inmate."
 
 
 3
 This case has had an unusual procedural posture. The district court initially denied the motion to proceed in forma pauperis without prejudice. Gelford then brought a motion to vacate that order. In response, the district court ruled that Gelford arguably stated a claim on the fourteenth amendment claim, but did not address his eighth amendment contentions. Gelford requested clarification of the status of his eighth amendment claim. The district court treated Gelford's request as a motion for reconsideration. The court denied the motion because Gelford "had not alleged that any of the named defendants knew he was in danger from another inmate and were then deliberately indifferent to this danger."[3] During the course of these proceedings, Gelford brought four additional motions to vacate the district Judge's denial of leave to proceed in forma pauperis on his eighth amendment claim. All of these motions were denied because the district court felt that Gelford failed to adequately link these defendants to the eighth amendment claim.[4]
 
 
 4
 The district court proceeded only on the fourteenth amendment claim and granted summary judgment to the defendants. The court determined that there is a distinction between punitive segregation and receiving segregation. This difference is determined by the privileges retained by the inmate. The district court found that it was undisputed that Gelford did not suffer the loss of any privileges. Therefore, summary judgment was appropriate.
 
 II.
 A. THE EIGHTH AMENDMENT CLAIM
 
 5
 On appeal, Gelford challenges the district court's denial of his motion to proceed in forma pauperis on his eighth amendment claim. Gelford also challenges the district court's grant of summary judgment to the defendants on the fourteenth amendment claim.
 
 
 6
 A pro se litigant's pleadings are liberally construed. Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir.1990). An in forma pauperis complaint can only be dismissed as frivolous "where it lacks an arguable basis either in fact or law." Neitzke v. Williams, --- U.S. ---, 109 S.Ct. 1827, 1831 (1989). Therefore, we will uphold the district court's denial of Gelford's motion to proceed in forma pauperis only if Gelford could provide no set of facts which would entitle him to relief.
 
 
 7
 In his complaint, Gelford alleged that he was classified as a vulnerable prisoner, yet prison personnel placed him in a cell with a prisoner who was know to be violent. As a result of these actions, Gelford was stabbed in the hand by his cellmate. Gelford also identified several prison personnel whom he alleged were in a position to know or should have known about the danger of placing violent and vulnerable inmates in the same cell. Under the eighth amendment, "a prison official will be liable for failing to protect an inmate form attacks if that official acts with 'deliberate indifference.' " Wilks v. Young, 897 F.2d 896, 897-98 (7th Cir.1990) (quoting Richardson v. Penfold, 839 F.2d 392, 394 (7th Cir.1988)). Although Gelford did not specifically allege that the defendants were "deliberately indifferent," from a liberal reading of the complaint, we cannot say that Gelford could provide no set of facts which would entitle him to relief.[5]
 
 B. THE FOURTEENTH AMENDMENT CLAIM
 
 8
 The district court granted the defendants' motion for summary judgment finding that because Gelford's privileges were not restricted, he was not in punitive status. Therefore, due process was not violated. On appeal Gelford argues that the district court erroneously considered only fourteenth amendment property interests while ignoring the liberty interests that are also protected by due process.
 
 
 9
 Gelford's argument is without merit. The record clearly indicates that Gelford was placed in "receiving status" while undergoing an orientation period. There is no way that this type of segregation can be viewed as anything but an administrative segregation. The Due Process clause does not create a right "to remain in the general prison population and avoid administrative segregation." Wallace v. Robinson, 914 F.2d 869, 873 (7th Cir.1990) (citing Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 869 (1983)).
 
 
 10
 The district court correctly granted the defendant's motion for summary judgment on the fourteenth amendment claim. The case must be remanded to allow Gelford to proceed in forma pauperis on his eighth amendment claim.
 
 
 11
 The decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Pursuant to Secs. 46.03(1) and 46.03(6)(a), (b), Wis.Stats. and Sec. HSS 302, Wis.Adm.Code, the State of Wisconsin Department of Corrections promulgated Internal Management Procedures which defines vulnerable inmates and recommends certain procedures when dealing with such inmates. This source provides:
 An inmate, because of small physical size, age, emotional state, low intellectual ability, or lack of criminal sophistication, may be considered vulnerable within a correctional population.
 Procedure:
 
 
 [1]
 Because of an inmate's size, age, emotional state, low intellectual ability, lack of criminal sophistication, special consideration may be necessary
 
 
 [2]
 These considerations may include, but are not limited to the following:
 a. Placement at an institution.
 b. Housing, program, and work assignments within an institution.
 
 
 [2]
 In his complaint, Gelford named the defendants and made certain allegations about their responsibilities at the GBCI. To summarize, Gelford alleged that:
 
 
 [1]
 Defendant Clusen was the Superintendent of GBCI who was ultimately responsible for the operation and management of the prison, including the training and supervision of the correctional personnel employed at GBCI
 
 
 [2]
 Defendant Bertrand was the Security Director of GBCI who was responsible for the security and placement of inmates and the training and supervision of correctional personnel
 
 
 [3]
 Defendant Norman was the Segregation Unit Director who was responsible for the management and placement of the inmates therein
 
 
 [4]
 Defendant Tierney was a Captain at GBCI and was the officer in charge of the segregation unit on April 15, 1986
 
 
 [5]
 Defendant McQuillan was a Lieutenant at GBCI and was the second shift officer in the segregation unit on April 15, 1986
 
 
 [3]
 In Dixon v. Pitchford, this court held that a district court may not grant leave to proceed in forma pauperis on appeal on some claims, but deny the request on other claims. Defendants urge us not to extend Dixon's holding to in forma pauperis complaints presented in the district court. In Holme v. Haines, 734 F.Supp. 366 (W.D.Wis.1990), a Wisconsin district court carefully analyzed this issue. The Haines decision concluded that district court judges may carve out frivolous claims from complaints while allowing a plaintiff to proceed in forma pauperis on claims that have arguable merit. We agree with the reasoning in Haines
 
 
 [4]
 The defendants note that the district court initially denied Gelford's eighth amendment claim without prejudice and suggest that Gelford is still free to file a properly amended complaint. As Gelford correctly points out, in the final judgment, the district court dismissed Gelford's entire complaint (including the eighth amendment claim) with prejudice and with costs. Therefore, this court has jurisdiction to decide whether the district court erred in denying Gelford the opportunity to go forward on that claim
 
 
 [5]
 In his later motions to vacate, Gelford did use the "deliberate indifference" buzzword. Additionally, he supplied the court with documentary evidence outlining the job duties of each of the defendants in an attempt to show that they were responsible for his placement. It may be true that some or all of the defendants named by Gelford are not the proper defendants to this suit. However, we cannot make this determination until Gelford is afforded some meaningful discovery to determine who makes the placement decisions and what, if any, policies govern these determinations