**Enrique PARDO, Plaintiff–Appellee, Cross–Appellant,**

v.

**Paul HOSIER, Louis Lowery, Kent Mills, Lieutenant Richard Foster, W.R. McNamara, W.C. Wheat, James Dooley, Ferdinand Klaren, Frank Zeimetz, J.W. Fairman, Jr., R.F. Harweger and Richard De Los Santos, Defendants–Appellants, Cross–Appellees.**

**LaCarttle JONES, Plaintiff–Appellee, Cross–Appellant,**

v.

**Louis O. LOWERY, Kent Mills, and Kathy Frederick, Defendants– Appellants, Cross–Appellees.**

**Nos. 90–1006, 90–1167, 90– 1007 and 90–1169.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1991.

Decided Oct. 30, 1991.

Mary Perlstein, Keith Emmons, Richard Howard, Dobbins, Fraker, Tennant, Joy & Perlstein, Champaign, Ill., Gregg W. Bonelli, argued, Mattoon, Ill., for plaintiffs-appellees.

Todd M. Tennant, Dobbins, Franker, Tennant, Joy & Perlstein, Champaign, Ill., for plaintiff-appellee LaCarttle Jones.

Neil F. Hartigan, Atty. Gen., Timothy J. Cavanaugh, Thomas A. Morrissey, Gary M. Griffin, Asst. Attys. Gen., Jerald S. Post, Asst. Atty. Gen., argued, Office of the Atty. Gen., Chicago, Ill., for defendants-appellants.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

These consolidated appeals and cross-appeals arise from civil rights cases filed by two Illinois state prison inmates. The inmates alleged constitutional deprivations relating to their placement in segregation and, following partial summary judgments in their favor, were awarded nominal damages.

## I. BACKGROUND

### A. *Enrique Pardo*

Plaintiff Pardo, an inmate at the Pontiac Correctional Center, received a Resident Disciplinary Report ("report") on May 26, 1980. He testified that the next day he was moved to the segregation unit. On May 28, 1980, an Adjustment Committee hearing was held and Pardo was told that he was being placed on investigative status. Pardo alleged that he was unaware of the nature of the charges against him. He was returned to the general prison population on June 6, 1980.

On June 11, 1981, Pardo received another report and was taken the following day to the segregation unit. Pardo testified that during an Adjustment Committee ("committee") hearing on June 13, 1981, he questioned the reason for the investigation and was told that "Internal Affairs would get back with [him]." Pardo alleged that he had no knowledge of the reason for the report and that Internal Affairs never contacted him about the investigation. He was released from segregation on June 18, 1981. No charges were brought against Pardo in connection with either report.

Pardo then filed suit under 42 U.S.C. § 1983 alleging that the defendant prison officials violated his constitutional rights by placing him in segregation without due process of law. In ruling on cross-motions for summary judgment, the district court found that Illinois law created a liberty

interest in remaining in the general prison population and that the defendants "failed to provide [Pardo] with the minimum requirements of due process." *Pardo v. Hosier*, 611 F.Supp. 693, 698 (C.D.Ill.1985). A partial summary judgment was granted in favor of Pardo on the issue of liability and following a jury trial to determine damages Pardo was awarded nominal damages of two dollars. Pardo was also awarded prevailing party attorney's fees; however, those fees were reduced by ninety percent by the district court. The defendants appeal from the judgment entered in favor of Pardo, and Pardo cross-appeals reduction of the prevailing party attorney's fees.

### B. *LaCarttle Jones*

Plaintiff LaCarttle Jones, also a Pontiac inmate, received three reports as a result of an incident that occurred on September 27, 1980. The reports alleged that Jones had created a general disturbance by addressing a guard with profanity after the guard requested that he lower the volume of his television. Several hours after the incident, Jones was taken to the segregation unit. On September 29, 1980, three committee hearings were held with respect to the three reports. The committee found Jones guilty of violating an administrative regulation and ordered him to serve fifteen days in disciplinary segregation along with a demotion to "C grade" status.

Jones filed suit under 42 U.S.C. § 1983 alleging that: (1) he was denied procedural due process when he was placed in administrative segregation; (2) the summaries issued by the committee failed to adequately state the evidence relied upon in finding Jones guilty and also failed to state the reasons for the specific disciplinary action taken against him; (3) he was denied the right to call witnesses at the committee hearing; and (4) he was denied the right to a committee composed of impartial members.

The district court granted a partial summary judgment in favor of Jones on the issue of the failure of the committee summaries to state the reasons for the disciplinary action taken. *Pardo*, 611 F.Supp. at 707. The district court also found that although Jones's placement in administrative segregation denied him a protected liberty interest without due process, the defendants were entitled to a good faith immunity defense. *Id.* at 702. Jones's motion for summary judgment was denied with respect to his right to call witnesses and the impartiality of a committee member.[1] Following a jury trial on the issue of damages, the district court entered a directed verdict in favor of Jones on the issue of the inadequacy of the committee summaries. A final judgment was entered awarding Jones nominal damages of one dollar as well as attorney's fees. The district court reduced the amount of attorney's fees requested by Jones by ninety percent. The defendants appealed and Jones cross-appealed the final judgment of the district court.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*, *DeGrand v. Motors Ins. Corp.*, 903 F.2d 1100, 1101 (7th Cir.1990), and we accept all facts and inferences in the light most favorable to the nonmoving party. *Stokes v. City of Madison*, 930 F.2d 1163, 1168 (7th Cir.1991).

In evaluating constitutional claims of prisoners, we must balance the need to protect prisoners' procedural rights against the need for prison safety and security. *Redding v. Fairman*, 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). In prison disciplinary proceedings, "prison administrators must be 'accorded wide-ranging deference in the ... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Mathews v. Fairman*, 779 F.2d 409, 415 (7th Cir.1985) (quoting *Bell v.*

---

1. On appeal, Jones does not raise the issue of his right to call witnesses, nor does he raise the issue of impartiality, and therefore we do not address the district court's denial of summary judgment on these issues.

*Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

Pardo and Jones claim that they had a liberty interest in remaining in the general prison population and that their placement in segregation by defendants violated their right to due process of law. The fourteenth amendment provides that a state may not deprive "any person of life, liberty, or property, without due process of law." Two inquiries are involved in evaluating procedural due process claims: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).

In addressing the first inquiry, an individual seeking to assert a constitutionally protected interest must establish "a legitimate claim of entitlement to it." *Id.* Liberty interests may arise from the due process clause itself or from state law. *Castaneda v. Henman*, 914 F.2d 981, 983 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1085, 112 L.Ed.2d 1190, 111 S.Ct. 1085 (1991). However, the Supreme Court has rejected the argument that the due process clause itself creates a liberty interest in a prisoner remaining in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Russ v. Young*, 895 F.2d 1149, 1152 (7th Cir.1989). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Thompson*, 490 U.S. at 460–61, 109 S.Ct. at 1908–09 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)). Therefore, in order to state a claim, the plaintiffs must find an enforceable liberty interest in state law.

■ In order for a liberty interest to be created by state law, the statute or regulation must "plac[e] substantive limitations on official discretion." *Thompson*, 490 U.S. at 462, 109 S.Ct. at 1909 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)). The Court in *Thompson* further required that the state law include " 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." *Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910. *See also Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871–72. However, the state's use of mere procedural guidelines, without more, is not sufficient to create a protectible liberty interest. *Kellas v. Lane*, 923 F.2d 492, 494 (7th Cir.1991); *Russ*, 895 F.2d at 1153. We must therefore analyze the relevant regulations to determine whether they contain the mandatory language required by the Supreme Court in *Thompson*.

**A. *Enrique Pardo***

■ Pardo was placed in administrative segregation pursuant to Administrative Regulation ("A.R.") 804(II)(J). Relying on *Hewitt*, the district court found that A.R. 804(II)(J) used mandatory language sufficient to create a liberty interest in an inmate continuing to reside in the general prison population. However, based upon our review of A.R. 804(II)(J) in light of *Thompson* (decided after the district court decision in this case) and *Hewitt*, we conclude that the requisite mandatory language was not employed and therefore no liberty interest was created.

The regulation at issue, A.R. 804(II)(J) (superseded by Ill.Admin.Code Title 20, § 504(D) (1985)), reads in relevant part that:

1. It is recognized that incidents occur which, in the interest of institutional security and safety, require that a resident be removed from the general population and placed in a holding unit pending the completion of an investigation. As the holding unit functions in the same manner as a segregation unit (except that single celling is not required in the

holding unit), a resident must be provided the same procedural safeguards and services as are required by this regulation relative to placements, conditions and services in a segregation unit.

2. A resident disciplinary report must be prepared and the appropriate hearing before the institutional Adjustment Committee must be held within the 72–hour guideline. The report and hearing should provide the resident with as much information as possible regarding the incident which resulted in his/her placement in a holding unit. It is not necessary that information which would be a detriment to the investigative process be provided to the resident; however, sufficient evidence must be provided so that the resident understands the reason for placement on investigative status and the general nature of the allegations or charges under investigation.

In *Thompson,* the Supreme Court held that Kentucky's prison visitation regulations provided standards to guide the employees' discretion, but did not include the mandatory language required to create a liberty interest. 490 U.S. at 464, 109 S.Ct. at 1910. The Court found that although the regulations included "substantive predicates," they "stop[ped] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Id.* We reach the same conclusion concerning A.R. 804(II)(J). While A.R. 804(II)(J) does provide guidelines to be applied in disciplinary proceedings, it does not circumscribe the prison officials' discretion by mandating a particular outcome.

Pardo argues that a liberty interest is created by the language of A.R. 804(II)(J)(1) which states that "a resident must be provided the same procedural safeguards and services as are required by this regulation...." Pardo also argues that a liberty interest is created by the use of mandatory language *within* the procedural guidelines of A.R. 804(II)(J), e.g. "resident disciplinary report must be prepared" and "sufficient evidence must be provided." However, this language falls short of creating a liberty interest because it does not

meet the *Thompson* test of "mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909–10. The regulation does not provide that if procedural safeguards are not met then the inmate may not be placed in administrative segregation. Nor does the regulation compel a particular result if the safeguards *are* followed. This is in contrast to the *Hewitt* regulations in which the Court found that the drafters had gone beyond mere procedural guidelines and used mandatory language sufficient to create a liberty interest. *Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871.

In *Hewitt,* the relevant regulation provided that:

An inmate may be temporarily confined to Close or Maximum Administrative Custody in an investigative status upon approval of the officer in charge of the institution *where it has been determined* that there is a threat of a serious disturbance, or a serious threat to the individual or others.... If no behavior violation has occurred, the inmate *must be released* as soon as the reason for the security concern has abated but in all cases within ten days.

*Id.* at 470 n. 6, 103 S.Ct. at 871 n. 6 (emphasis added). The regulations in *Hewitt* include the requisite mandatory language by allowing placement in administrative segregation pending investigation only after certain criteria have been met and by requiring release if no violation has occurred. There is no similar mandatory language in A.R. 804(II)(J). The decision to remove an inmate from the general population is within the discretion of the prison officials when, "in the interest of institutional security and safety," it is deemed necessary.

In evaluating due process claims, a crucial distinction must be made between the substantive right and the procedure formulated to prevent its deprivation. When a state chooses to establish procedural guidelines it does not create an independent substantive right—"[p]rocess is not an end in itself." *Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748–49, 75

L.Ed.2d 813 (1983). In *Kellas*, 923 F.2d at 495, we held that the procedural guidelines employing mandatory language did not create a liberty interest. Kellas, an inmate who was involuntarily detained in protective custody, argued that the mandatory language contained within the guidelines created a liberty interest in remaining in the general population of a prison. *Id.* at 494–95. Rejecting that argument, this court found that "these guidelines are directed toward the prison officials and, thus, do not create a due process claim of entitlement on the inmates' behalf." *Id.* at 495. The Supreme Court in *Hewitt* observed the irony inherent in discouraging states from promulgating procedural guidelines for prison officials by subjecting them to the scrutiny of federal courts, "while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause." 459 U.S. at 471, 103 S.Ct. at 871.

The procedures of A.R. 804(II)(J) do not contain the mandatory language necessary to compel a particular outcome if the procedures are followed. Nor does the regulation require release from administrative segregation if the procedures are not followed. As the Court noted in *Thompson*, "the mandatory language requirement is not an invitation ... to search regulations for *any* imperative that might be found. The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question." 490 U.S. at 464 n. 4, 109 S.Ct. at 1910 n. 4 (emphasis in original). We therefore find that A.R. 804(II)(J) does not create a liberty interest in remaining in the general prison population. Because the administrative regulation has not created a protectible liberty interest in remaining in a general prison population, we need not address the adequacy of procedural safeguards accorded to Pardo. In view of the absence of a liberty interest it is unnecessary to evaluate the issue of defendants' good faith immunity defense.[2]

### B. *LaCarttle Jones*

#### 1. Administrative Segregation Pending Investigation

■ Jones alleged that the defendants violated the due process clause by placing him in administrative segregation pending a hearing on the charge against him. The district court held that the administrative regulation governing temporary segregation pending a disciplinary hearing created a protected liberty interest in continuing to reside in the general population. *Pardo*, 611 F.Supp. at 700. However, the district court found that the defendants were entitled to qualified good faith immunity and granted partial summary judgment in their favor. *Id.* at 702. We find, however, that the regulation at issue does not create a liberty interest and so we need not address the issue of defendants' qualified immunity.

The relevant regulation, A.R. 804(C)(2), provides that:

> The shift supervisor shall determine whether or not it is necessary to place the resident in temporary confinement status pending a disciplinary hearing. Such a decision shall be based on the degree of aggressiveness exhibited by the resident, the degree of threat posed to the safety and security of the institution, and/or the resident's need for safekeeping to protect him/her from injury.

In *Woods v. Thieret*, 903 F.2d 1080, 1083 (7th Cir.1990), we held that a regulation nearly identical to A.R. 804(C)(2) did not create a liberty interest.[3] The regulation

---

2. In his cross-appeal, Pardo contends that the district court erred in admitting certain of defendants' exhibits. He further argues that an improper jury instruction was given with respect to mitigation of damages. Because the regulation at issue does not create a liberty interest, we need not reach these arguments.

3. The regulation at issue in *Woods*, A.R. 504.50, provides:

> The shift supervisor shall determine whether or not it is necessary to place the committed person in temporary confinement status pending a disciplinary hearing based on:
> a) The degree of aggressiveness exhibited by the committed person;

in *Woods* employs mandatory language and adopts procedural guidelines, but it "do[es] not mandate any particular outcome with regard to the substantive predicates." *Id.* at 1083.

The language of A.R. 804(C)(2) also uses mandatory language, but it fails to require a certain result. Despite both regulations' mandatory language establishing pertinent criteria, the ultimate resolution is left to the discretion of the prison officials, and, therefore, no protectible liberty interest is created. As we recently held in *Wallace v. Robinson*, 940 F.2d 243, 246 (7th Cir.1991), "[o]nly statutes or rules attaching consequences to particular circumstances give prisoners liberty or property interests." The district court's grant of summary judgment as to this issue is therefore affirmed, but on the basis that the regulation at issue did not create a liberty interest.[4]

### 2. Adjustment Committee Summaries

■ Following the issuance of a disciplinary report on an inmate, the inmate has a hearing before an adjustment committee. The committee rules on the disposition of the report and imposes a penalty if the inmate is found guilty. After the hearing, the committee issues a summary outlining the proceedings. The district court found that the committee summaries provided to Jones deprived him of his right to procedural due process because they were "devoid of reason or explanation for the specific disciplinary action taken against the plaintiff." *Pardo*, 611 F.Supp. at 705.

The Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974), held that a Nebraska statute created a protectible liberty interest by providing that a prisoner can lose "good-time" credits if he is guilty of serious misconduct. The defendants do not dispute that Jones possessed a liberty interest at the disciplinary hearing stage of the proceedings and was therefore entitled to

procedural due process. However, defendants assert, and we agree, that the summaries were constitutionally sufficient and Jones was accorded his procedural due process protections.

In *Wolff*, the Court held that "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." 418 U.S. at 564–65, 94 S.Ct. at 2978–79 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). The reasons for this requirement include protection of the inmate against collateral consequences of disciplinary action and fairness in the administrative hearing process. *Culbert v. Young*, 834 F.2d 624, 629 (7th Cir.1987), *cert. denied*, 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988). The district court found that the summaries provided to Jones did provide the "evidence relied on," but that they were constitutionally deficient in that they failed to state the explanation for the specific disciplinary action taken. *Pardo*, 611 F.Supp. at 705.

In the committee summaries provided to Jones, at the section of the forms entitled "Basis for Decision/Evidence Relied Upon," the committee noted:

(First summary) "[B]ased on resident's statements and officer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a general disturbance."

(Second summary) "[B]ased on resident's statements and officer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a disturbance."[5]

Additionally, in a separate section of the summary forms the committee indicated the specific portion of Jones's testimony that contributed to their resolution of the charge.

*Financial Corp. v. Federal Intermediate Credit Bank*, 852 F.2d 242, 244 (7th Cir.1988).

---

b) The degree of threat posed to the safety and security of the facility; and/or
c) The need to place the committed person in safekeeping to protect him from injury.

**4.** An appellate court may affirm on any ground that finds support in the record. *Dairyland*

**5.** The text of the third summary is identical to that of the second summary.

In *Saenz v. Young*, 811 F.2d 1172, 1173–74 (7th Cir.1987), we found constitutional a summary that provided as its only grounds for decision the statement that "Officer Fabry's written statement supports the finding of guilt that an attempt was made by Inmate Saenz to commit battery upon the [other] inmate." We also upheld the constitutional sufficiency of a summary stating that the finding of guilt was based "on statements in C.R. [conduct report] by Staff in guilt finding that inmate was disrespectful" and that "he caused a disruption by his actions." *Culbert*, 834 F.2d at 627, 631.

In *Culbert*, this court said that "the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides." 834 F.2d at 631. The summaries indicate that Jones admitted making derogatory remarks to the officer because he believed the officer was drunk and harassing him. The committee assessed the relative credibility of the officers' reports and Jones's testimony, then referred to that credibility evaluation as the basis for its decision. The charge against Jones was simple and straightforward—using abusive language toward a guard after being told to turn down his television. The resolution of the charge basically involved a credibility determination by the committee, and we, therefore, find that the summaries adequately addressed the evidentiary basis for the committee's finding and the reasons relied on in administering disciplinary action.[6]

**C. Attorney's Fees**

 The attorneys for Pardo and Jones argue that if the judgments in their favor are reversed by this court, they remain entitled to "prevailing party" attorney's fees under 42 U.S.C. § 1988. As support for this contention, they cite *Hennigan v. Ouachita Parish School Board*, 749 F.2d 1148 (5th Cir.1985), for the proposition that a plaintiff may be a prevailing party without having obtained formal relief when the plaintiff's action was a substantial factor or significant catalyst in motivating the defendants to end their unconstitutional behavior. *Hennigan* involved a class action in which the class sought reapportionment of school board members based on a new census. *Id.* at 1150. Following partial summary judgment for defendants, the school board voluntarily implemented the reapportionment provisions, and the plaintiffs sought attorney's fees on behalf of the class. *Id.* The Fifth Circuit held that the plaintiffs had shown a causal connection between the filing of the suit and the defendant's actions—*i.e.*, plaintiffs had been a significant catalyst—and awarded plaintiffs attorney's fees. *Id.* at 1153.

In contrast, the attorneys for plaintiffs have not presented any facts to show that these lawsuits prompted remedial actions by the defendants. In *Palmer v. City of Chicago*, 806 F.2d 1316, 1320 (7th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987), we held that "when a judgment on which an award of attorney's fees to the prevailing party is based is reversed, the award, of course, falls with it." Therefore, while we acknowledge the efforts expended by plaintiffs' counsel, we must vacate the district court's award of attorney's fees.

### III. CONCLUSION

For the foregoing reasons, the judgments of the district court in favor of Pardo and Jones are

REVERSED.

---

6. In Jones's cross-appeal, he argues that the district court erred in directing a verdict against him on the issue of the intentional nature of the prison officials' actions. Jones also contends that the district court improperly denied him the opportunity to present evidence that he was entitled to damages in addition to the nominal damage award of one dollar. However, in light of our findings that the administrative segregation of Jones did not implicate a protectible liberty interest and that the committee's summaries were adequate, we need not address these issues.