Eddie GAVIN, Plaintiff,

v.

Kenneth McGINNIS, as Director of the Illinois Department of Corrections, and James Schomig, as Assistant Warden of Stateville Correctional Center, Defendants.

No. 91 C 2754.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 24, 1994.

James I. Marcus, Williams & Marcus, Ltd., Chicago, IL, for plaintiff and Eddie Gavin, plaintiff, pro se.

David S. Rodriguez and Steven Todd Schmall, Illinois Atty. General's Office, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the *sua sponte* reconsideration of the court's order of April 3, 1992, *See, Gavin v. McGinnis,* 788 F.Supp. 1012 (N.D.Ill.1992). For the following reasons, the court vacates its April 1992 order in part and grants the motion of defendant James Schomig to dismiss the complaint.

## BACKGROUND

At the time plaintiff Eddie Gavin ("Gavin") experienced the alleged injury, he was serving time for committing a felony at the Stateville Correctional Center in Joliet, Illinois ("Stateville"). Gavin has since been released from Stateville. Gavin filed this lawsuit *pro se* based on 42 U.S.C. § 1983, alleging that defendants deprived him of his civil rights generally. Gavin named as defendants James Schomig ("Schomig"), the Assistant Warden at Stateville, Schomig's Officers generally, and Kenneth McGinnis ("McGinnis"), the former director of the Illinois Department of Corrections. In a minute order dated June 19, 1992, the court dismissed the officers and McGinnis from the lawsuit because Gavin failed to effectuate proper service. Schomig is the only remaining defendant. In January 1992, Schomig filed a motion to dismiss the complaint. The court denied his motion in an opinion dated April 3, 1992; however, the court declined to decide whether a particular liberty interest existed

since the matter was at an early stage of the litigation.

Gavin alleges in his complaint that on six different occasions, over a six month period, certain members of his family were denied access to Stateville for visitation.[1] Gavin explains he received a letter from Stateville prison officials reporting that they denied his sister access to visitation on November 25, 1990, because she was intoxicated. The prison officials placed his sister, Rose, on a six month visitation restriction list. Gavin describes that there may have been some confusion over the names of his sisters Rosella and Rose, and his mother Rosalie, and, hence, misidentification of his relatives. He contends that Rosella was the one who visited on November 25, 1990, not Rose. Furthermore, Gavin denies that his sister Rosella was intoxicated at that time.

*DISCUSSION*

In the court's opinion of April 3, 1992, the court denied, with qualification, Schomig's motion to dismiss. The court wrote:

> While prisoners do not possess a substantive liberty interest in visitation arising under the Constitution, section 3–7–2(f) of Illinois' Unified Code of Corrections (Ill. Rev.Stat. ch. 38, ¶ 1003–7–2(f)) at least arguably supplies a prisoner a sufficient liberty interest to state a claim under section 1983.... However, it is by no means clear that prisoners have a protectible liberty interest in visitation.

*Gavin v. McGinnis*, 788 F.Supp. 1012, 1013 (N.D.Ill.1992) (citations omitted). Furthermore, the court wrote that it "expressly declines to decide, at this early stage in the litigation, whether a prisoner has a ... liberty interest in visitation." *Id.* Since "District courts ... have a responsibility to keep their court calendars as current as possible," *North Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co.*, 842 F.2d 164, 167 (7th Cir.1988), the court finds that this is an appropriate juncture at which to revisit the issue. The court now addresses whether the denial of visitation privileges is cognizable in Gavin's § 1983 cause of action.

*A. CONSTITUTIONAL VIOLATION*

■ Again, the underlying motion is one for dismissal of Gavin's 42 U.S.C. § 1983 claim. "All the complaint need do to withstand a motion to dismiss for failure to state a claim is 'outline or adumbrate' a violation of the statute or constitutional provision upon which plaintiff relies, and connect the violation to the named defendants." *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir.1992) (citations omitted). To state a viable claim under § 1983, a plaintiff must allege sufficient facts to demonstrate that he was "deprived of an interest secured by the Constitution or laws of the United States, and the deprivation was visited upon him by a person or persons acting under color of state law." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1249 (7th Cir.1994) (citing *Gomez v. Toledo*, 446 U.S. 635, 638–40, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980)). However, "[i]n evaluating constitutional claims of prisoners, we must balance the need to protect prisoners' procedural rights against the need for prison safety and security." *Pardo v. Hosier*, 946 F.2d 1278, 1280 (7th Cir.1991); *see also Woods v. O'Leary*, 890 F.2d 883 (7th Cir.1989) (holding that regulations may impinge constitutional rights if the regulation is reasonably related to legitimate penological interests).

■ In 1972, the United States Supreme Court opined the following of liberty interests:

> "Liberty" and "property" are broad and majestic terms. They are among the "[g]reat [constitutional] concepts ... purposely left to gather meaning from experience.... [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged."

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (quoting *National Mut.*

---

1. Gavin alleges that prison officials denied either his mother, his sister, or both from visitation on the following six dates: November 25, 1990; November 27, 1990; December 22, 1990; February 17, 1991; February 23, 1991; and March 2, 1991.

*Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 626, 69 S.Ct. 1173, 1195–96, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)). "Liberty interests may arise from the due process clause itself or from state law." *Pardo*, 946 F.2d at 1281. A liberty interest is not created in prison visitation through the United States Constitution. *Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir.1987). The privilege of receiving visitors is a protected liberty interest only if state law recognizes visitation as such. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461–62, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

■■■ The issue before the court is whether an Illinois statute created a federal liberty interest in visitation rights such that any deprivation thereof would amount to a constitutional violation, thereby allowing the deprivation of visitation to serve as foundation for a § 1983 action. *See, e.g., Benford v. Wright*, 782 F.Supp. 1263, 1265 (N.D.Ill.1991) (recognizing that "Illinois prison regulations for minor disciplinary infractions create a liberty interest under the due process clause of the Fourteenth Amendment"). Only after a showing of a cognizable liberty interest does the court reach the issue of whether plaintiff was afforded due process. *Maust v. Headley*, 959 F.2d 644, 647 (7th Cir.1992).[2]

■■■ In determining the state's position on visitation, the court considers whether the regulations at issue create a substantive right or whether they merely establish procedures for prison officials to follow. *Villanova v. Abrams*, 972 F.2d 792, 798 (7th Cir. 1992). To create a liberty interest, a state regulation must do more than establish procedures; it must substantively limit an official's discretion. *Thompson*, 490 U.S. at 461–62, 109 S.Ct. at 1909; *Pardo*, 946 F.2d at 1281; *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir.1988) (holding that there is no liberty interest in being transferred "[a]bsent

some statutory or regulatory provision that clearly limits prison officials in the exercise of their discretion"). The *Thompson* court wrote that a state may limit discretion in a number of ways:

> Neither the drafting of regulations nor their interpretation can be reduced to an exact science. Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.

*Thompson*, 490 U.S. at 462, 109 S.Ct. at 1909 (citations omitted). If, however, "the ultimate resolution is left to the discretion of the prison officials, [then] no protectible liberty interest is created." *Pardo*, 946 F.2d at 1284. Moreover, *Thompson* "required that the state law include ' "explicitly mandatory language," i.e., specific directives to the decision-maker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest.' " *Id.* at 1281 (quoting *Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910). "When a state chooses to establish procedural guidelines it does not create an independent substantive right." *Id.* at 1282. In *Williams*, for instance, the Seventh Circuit Court of Appeals cited a number of cases which held that there is no liberty interest in the following areas: no liberty interest in a particular wing of a prison; no liberty interest in remaining in the prison's general population; no liberty interest in remaining in a certain state institution; and no liberty interest in remaining in the state prison system rather than the federal system. *Williams*, 837 F.2d at 309. "Only statutes or rules attaching consequences to particular circumstances give prisoners liberty or property interests."

---

2. The court need not reach this second issue because it finds that Gavin's § 1983 cause of action falls, as a matter of law, on other grounds. Nevertheless, the court notes that Gavin may have received due process because he participated in a prisoner grievance procedure to seek relief. (Compl. ¶ C, at 3.) The fact that the prison mailed Gavin a letter informing him of the

reason for limiting the privilege and afforded Gavin an opportunity to contest the decision, leads the court to conclude that the prison comported with due process. *See Smith v. Godinez*, No. 92 C 1880, 1993 WL 135450 (N.D.Ill. Apr. 29, 1993); *Logan v. Lane*, No. 83 C 2504, 1989 WL 112726 (N.D.Ill. Sept. 15, 1989).

*Wallace v. Robinson,* 940 F.2d 243, 246 (7th Cir.1991).

The Sixth Circuit Court of Appeals found that a liberty interest was created by a Tennessee regulation. *Long v. Norris,* 929 F.2d 1111, 1117 (6th Cir.1991). The *Long* court found that the regulation contained mandatory language sufficient to give rise to a liberty interest citing to the word "shall" as the regulation used it. Also, the Ninth Circuit Court of Appeals ruled that a Washington prison regulation created a liberty interest protected by the Fourteenth Amendment. *Mendoza v. Blodgett,* 960 F.2d 1425, 1431 (9th Cir.1992); *but see Caraballo–Sandoval v. Honsted,* 35 F.3d 521 (11th Cir.1994) (finding that no liberty interest was created by a regulation that gave the warden discretion to restrict visitation for reasons such as security).

The Illinois statute in question that might give rise to liberty interest is Illinois Revised Statute chapter 38, paragraph 1003–7–2(f) ("subsection (f)").[3] Subsection (f) provides, in pertinent part, as follows:

> All of the institutions and facilities of the Department shall permit every committed person to receive visitors, except in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility. Clergy, religious chaplain and attorney visiting privileges shall be as broad as the security of the institution or facility will allow.

Ill.Rev.Stat. ch. 38, para. 1003–7–2(f). District courts in this circuit have addressed subsection (f) and found that a liberty interest was created. *See Jenkins v. Lane,* No. 86 C 0059, 1989 WL 84474 (N.D.Ill. July 20, 1989); *Logan v. Lane,* 83 C 2504, 1989 WL 112726 (N.D.Ill. Sept. 15, 1989). In 1987, Judge Shadur addressed the language of subsection (f). *United States ex rel. Adams v. O'Leary,* 659 F.Supp. 736, 739 (N.D.Ill. 1987). In *Adams,* Judge Shadur held that subsection (f) "certainly creates a liberty interest in receiving visitors...." That case cited *Olim v. Wakinekona,* 461 U.S. 238,

248–49, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) as authority. *Olim* defined the type of discretion which would not create a liberty interest: "If the decision-maker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all' the State has not created a constitutionally protected liberty interest." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747 (citations omitted). Based on its reading of *Olim,* the *Adams* court concluded that subsection (f) created a liberty interest. The *Adams* court reasoned that the word "shall" in subsection (f) expressly mandated that prison officials permit visitation to "every committed person." *See also Logan,* 1989 WL 112726 (holding that the term "shall" constituted mandatory language and quoting *Cain v. Lane,* 857 F.2d 1139, 1145 (7th Cir.1988)). Furthermore, it found subsection (f)'s exceptions sufficiently definite to constitute objective criteria as defined by *Olim.*

In addition, the Seventh Circuit acknowledged the *Adams* holding and the possibility that subsection (f) created a liberty interest, but the appellate court found that the issue remained "open" for the Seventh Circuit. *See Mayo v. Lane,* 867 F.2d 374, 376 (7th Cir.1989). Similarly, the Illinois appellate court interpreted subsection (f) as creating a right for inmates to receive visitors. *Swope v. Northern Illinois Gas Co.,* 251 Ill.App.3d 850, 191 Ill.Dec. 251, 623 N.E.2d 841 (1993). In view of these decisions, this court is persuaded that subsection (f) contains language which is sufficiently mandatory to limit the official's discretion and, thereby, create a liberty interest. Accordingly, Gavin's complaint is not dismissed for lack of a cognizable constitutional right.

### B. SUPERVISORY LIABILITY

 Nevertheless, Gavin fails to allege enough facts to state a § 1983 cause of action. In order to hold a supervisory official liable under § 1983, a plaintiff must allege that the supervisory official participated in or was directly responsible for an unconstitu-

---

**3.** The court cites to the revised statutes, as opposed to the compiled statutes, because the former were the statutes in effect at the time of the alleged injury.

tional act. *Moore v. State of Ind.*, 999 F.2d 1125, 1129 (7th Cir.1993); *Rascon v. Hardiman*, 803 F.2d 269, 273–74 (7th Cir.1986). For liability to attach to prison supervisors under § 1983, a plaintiff must allege the personal knowledge or involvement of those superiors. *Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir.1990) (holding that personal liability will only be imposed on a superior for his reckless disregard of a deputy's known dangerous propensities); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). A supervisor's mere negligence or even gross negligence in failing to detect or prevent subordinates' misconduct will not subject a supervisor to § 1983 liability. *Jones*, 856 F.2d at 992; *see Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir.1994) ("[N]egligence is not actionable in a suit under section 1983 complaining about the infliction of cruel and unusual punishments."); *Wilson v. City of Chicago*, 6 F.3d 1233, 1241 (7th Cir.1993) ("Neither respondeat superior nor negligent supervision of subordinates is an authorized ground of liability in a suit under 42 U.S.C. § 1983."). A plaintiff must establish some affirmative nexus between the misconduct complained of and the official who is sued. *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985).

In the case at bar, there are no allegations that widespread abuses had occurred and that Schomig had failed to respond repeatedly. *See, e.g., Thomas v. Frederick*, 766 F.Supp. 540, 556 (W.D.La.1991); *see also Hamilton v. Scott*, 762 F.Supp. 794, 803–04 (N.D.Ill.1991) ("Absent allegation that [the Director of the Illinois Department of Corrections and the prison warden] were either directly involved in the alleged misconduct or were recklessly indifferent to the constitutional violations of which they had some knowledge," the complaint was dismissed), *aff'd, Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.1992). Gavin's allegations merely establish that he sent one letter to Schomig, for which he received a response approximately two weeks later. This is inadequate under the law to demonstrate reckless indifference. Even though Gavin outlines a violation of a liberty interest, he cannot sufficiently connect that violation to Schomig to attach liabil-

ity. Accordingly, the complaint fails to state a claim against Schomig, thus, necessitating dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## C. DOCTRINE OF QUALIFIED · IMMUNITY

The court also notes that the doctrine of qualified immunity could protect Schomig as well, although he has not raised the defense as of yet. In *Hunter v. Bryant*, 502 U.S. 224, 226–28, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991), the Supreme Court acknowledged that qualified immunity is " 'an immunity from suit rather than a mere defense to liability,' " which should be addressed swiftly. *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). Furthermore, since one of the objectives of the qualified immunity seeks to protect officials from the cost of trial, the district court may resolve the issue before discovery. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Kernats v. O'Sullivan et al.*, 35 F.3d 1171, 1176 (7th Cir.1994); *Zorzi v. County of Putnam*, 30 F.3d 885, 891 (7th Cir.1994); *Walker v. Shansky*, 28 F.3d 666 (7th Cir. 1994). The doctrine recognizes that future interpretations of some statutory and constitutional rights are legally ambiguous. *Kernats*, 35 F.3d at 1176. As such, the doctrine does not hold officials to principles of law that are not established at the time of their discretionary acts.

The Seventh Circuit has articulated a two step analysis for assessing the doctrine of qualified immunity: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " *Zorzi*, 30 F.3d at 892 (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1210 (7th Cir.1988)). Since the court has acknowledged that a liberty

interest is created by Illinois statute, the crucial inquiry here is "whether the contours of the alleged right were sufficiently clear at the time of the conduct so that a 'reasonable official would understand that what he is doing violates that right.'" *Walker,* 28 F.3d at 670 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). The court finds, as is evident from its discussion within, that the existence of a statutorily created liberty interest in Illinois was not clearly established at the time of the injury. Therefore, the doctrine of qualified immunity shields Schomig from liability.

## CONCLUSION

For the foregoing reasons, the court dismisses Gavin's § 1983 complaint.

IT IS SO ORDERED.