25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Leshurn HUNT, Plaintiff/Appellant,
v.
Odie WASHINGTON, Warden, Dixon Correctional Center, et al.,
Defendants/Appellees.
 No. 93-1259.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 21, 1994.*
Decided May 20, 1994.
 
 Before FAIRCHILD, FLAUM, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Leshurn Hunt, a prisoner of Illinois, appeals the judgment of the district court dismissing his civil rights suit, 42 U.S.C. Sec. 1983, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).
 
 
 2
 Hunt was attacked by his cellmate, Corgiss Ross, while he slept. Ross pulled the sheets off Hunt and pulled his underwear off while, at the same time, placing himself on top of Hunt in order to perform sexual intercourse. Hunt was able to fend off Ross. Ross pushed the security button in the cell. Henson was the first officer on the scene. Although Hunt told him that Ross had attempted to rape him, Henson suggested that Ross and Hunt remain cellmates. Hunt complained, so Henson called for assistance. Officers Humphrey, Housenga, and Eubanks arrived. The officers escorted Ross out of the cell, but apparently only for a few moments. The record suggests that, despite being apprised of the attempted rape, the officers forced Hunt to remain in the cell with Ross overnight.
 
 
 3
 In his complaint, Hunt alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from Ross; by placing a known sexual offender in his cell; by failing to protect him from unforeseen harm; by failing to provide him with medical assistance in the form of psychiatric help for his mental and psychological problems; and by placing him, following his release from segregation, in the same wing of the prison as an inmate with whom he had previous problems. Hunt further alleged that the defendants violated his due process rights by failing to have an adequate policy in place for screening inmates before placing them in the general population and in the various cells; by placing him in disciplinary segregation for an incident unrelated to his room assignment; and by placing him in pre-hearing segregation in a non-emergency situation.
 
 
 4
 Although we agree with the district court's dismissal of most of Hunt's claims, we disagree with the court's dismissal of Hunt's Eighth Amendment claim that prison officials deliberately failed to protect Hunt from the probability of repeat sexual attacks by Ross or others. The Eighth Amendment requires the state to protect prisoners from each other. Duane v. Lane, 959 F.2d 673, 676 (7th Cir.1992). Prison officials are liable for failing to prevent an injury inflicted upon one inmate by a fellow inmate where the officials have displayed deliberate indifference to the inmate's constitutional rights. Id. "That is, the officials must 'want[ ] harm to come to the prisoner,' or, at least, must possess 'total unconcern for a prisoner's welfare' in the face of 'serious risks.' " Id. (quoting McGill v. Duckworth, 944 F.2d 344 347 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992)). Negligence is not enough; a prisoner must show either actual knowledge of the danger or danger objectively so great that actual knowledge of the danger can be inferred. Id.
 
 
 5
 A pro se complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hughes v. Rowe, 449 U.S. 5, 10 (1980). We must accept as true the factual allegations of Hunt's complaint, see id., and we must view the allegations in a light most favorable to Hunt. Wolfolk v. Rivera, 729 F.2d 1114, 1116 (7th Cir.1984). Because Hunt's allegations, if true, are sufficient to establish that the officers possessed a total unconcern for Hunt's welfare in the face of a serious risk of injury to Hunt, Hunt's Eighth Amendment claim should not have been dismissed under Federal Rule of Civil Procedure 12(b)(6).
 
 
 6
 For the reasons stated in the attached order of the district court, we AFFIRM the judgment of the district court with respect to all of Hunt's claims but his claim that the defendants violated his Eighth Amendment rights by failing to protect him from further sexual attack. For the reasons stated above, we REVERSE the judgment of the district court insofar as it dismisses that claim, and we REMAND this case for further proceedings consistent with this order.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF ILLINOIS
 WESTERN DIVISION
 
 7
 Leshurn Hunt, N42562 Plaintiff,
 
 
 8
 vs.
 
 
 9
 Odie Washington, Warden Dixon CC, Richard Dusing, Asst.
 
 
 10
 Warden of Operations, John Doe, 11-7 Shift Commander, Lt.
 
 
 11
 Humphrey, Lt. Housenga, Lt. Cavazos, Sgt. Eubanks, c/o
 
 
 12
 Henson, Capt. Floyd Gardner, 3-11 Shift Commander, Lt. Rick
 
 
 13
 Reubin, Defendants.
 
 Case No. 82 C 20115
 
 14
 Jan. 12, 1993.
 
 ORDER
 INTRODUCTION
 
 15
 Plaintiff, LeShurn Hunt, an inmate at the Dixon Correctional Center in Dixon, Illinois, has filed this action pro se against various defendants who are Illinois correctional officials and officers at Dixon Correctional Center, alleging that they deprived him of certain Constitutional rights in violation of 42 U.S.C. Sec. 1983. Specifically, plaintiff makes the following claims: (1) defendants violated his Constitutional rights when they failed to protect him from a dangerous situation; (2) defendants violated plaintiff's rights by placing a known sexual offender in his cell; (3) defendants do not have an adequate policy in place for screening inmates before placing them in the general population and in the various cells; (4) defendants failed to protect him from unforeseen harm; (5) defendants failed to provide him with medical assistance in the form of psychiatric help for his mental and psychological problems; (6) defendants violated his rights by placing him in disciplinary segregation for an incident unrelated to his room assignment; (7) the incident in which plaintiff was involved did not constitute an emergency and it was not necessary that plaintiff be taken to segregation; and (8) defendants' lack of investigation violates his rights insofar as once plaintiff was released from disciplinary segregation, he was confronted by an inmate with whom he had previous problems, as they were placed in the same wing in another unit.
 
 
 16
 Defendants have filed a motion to dismiss, contending that plaintiff: (1) has failed to allege a cognizable injury under Sec. 1983; (2) has not demonstrated that defendants were deliberately indifferent to his safety concerns; (3) has failed to allege personal involvement of the named defendants in the constitutional deprivations; and (4) has no constitutional right to remain in the general prison population pending a disciplinary hearing.
 
 FACTS
 
 17
 On a motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint and views those allegations in the light most favorable to the non-moving party. Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir.1989). Accordingly, the following relevant allegations in the complaint will be accepted as true for purposes of this motion.
 
 
 18
 On February 17, 1992, at approximately 2:00 a.m., plaintiff was attacked by his cellmate, Corgiss Ross, while he slept. Ross pulled the sheets off of plaintiff and pulled his underwear off, while, at the same time, placing himself on top of plaintiff in order to perform sexual intercourse. Plaintiff kicked Ross and jumped up, reaching for the light. Ross stood near the door to the cell in the nude pushing the security button, stating that the "Devil" had made him do it.
 
 
 19
 Defendant Henson approached the cell and stated that he did not want to get them into trouble. Despite plaintiff having told Henson of the attempted rape, Henson suggested that they both lock up back in the cell. Plaintiff then threatened Henson to get some help. Henson called for assistance.
 
 
 20
 Defendants Humphrey, Housenga and Eubanks arrived and also tried to get plaintiff to go back into the cell with Ross, even though they had been apprised of the attempted rape. After Humphrey, Housenga and Eubanks made several threats to send plaintiff to the segregated area of the facility, plaintiff had to convince them that Ross was the aggressor and that he was in fear for his life because Ross was a far bigger inmate than he. Plaintiff further told these defendants that he wanted Ross out of his cell or they could take him to segregation.
 
 
 21
 The next day, February 18, 1992, plaintiff contacted defendant Cavazos about an assignment with a smaller-sized cellmate. Allegedly, Cavazos told plaintiff that he had either two choices: inmate Marsh, who was 6'4" tall and approximately 230 lbs., or inmate Pendleton, who stood 6'5", weighed 220 lbs and was known throughout the institution to be a sexual offender. Plaintiff told Cavazos that these choices were unacceptable to him.
 
 
 22
 Plaintiff, who is 5'5" tall and approximately 120 lbs., informed Cavazos that he would like to have inmate Milton, who was similar in size and stature to plaintiff, placed in his cell with him. Plaintiff informed Cavazos about the previous night's incident and suggested that the incident could have been prevented if inmate Milton had been put in his cell with him. Cavazos merely laughed and replied, "All that Ross was trying to do was to get him a little."
 
 
 23
 Later that day, at approximately 3:30 p.m., plaintiff was informed by Control Officer Nolan that Pendleton, whom plaintiff claims is a homosexual and rapist, was going to be his roommate, but only for a short period of time. Plaintiff complained to defendants Reubin and Gardner and told them of his previous night's experience. Reubin stated that he had his orders and that plaintiff had to accept Pendleton as his roommate and give up his bottom bunk.
 
 
 24
 Plaintiff alleges that he then called his attorney, M. Harper, and requested her assistance. Harper then called the institution and was told by Gardner that he was not going to change any policy regarding plaintiff so that he could have another inmate in his cell. Gardner further told Harper that plaintiff had to either accept Pendleton or he was going to be sent to segregation for a long period of time.
 
 
 25
 Reubin told plaintiff that he was going to be "walked" to segregation for fighting with his cell mate two nights earlier and for refusing to take another inmate in his cell. Plaintiff was then "walked" to segregation, where he stayed for several days before being released back into the general population.
 
 
 26
 While in segregation, plaintiff complained to medical personnel that he was having psychological problems after the attempted rape and needed help. He alleges that he suffered from flashbacks and was having a difficult time adjusting. An unknown person from the medical staff saw plaintiff and informed him that psychiatric help would be made available to him. No psychiatric treatment was provided to plaintiff, however, and he is still suffering from psychological problems related to the attempted rape.
 
 
 27
 Further, plaintiff is having problems with the inmates in the general population. Allegedly, these inmates are confronting plaintiff and taunting him about the rape incident involving Ross. This, plaintiff alleges, has resulted in increased mental and psychological problems. Plaintiff has filed this suit and seeks an award of $100,000 from each of the named defendants, punitive damages of $100,000, and injunctive relief.
 
 
 28
 Plaintiff has also included with his complaint, a letter, dated February 19, 1992, addressed to administrative assistant Ron Gray, indicating that he had been sent to segregation through no fault of his own. In addition, plaintiff has attached a copy of a disciplinary report, dated February 18, 1992, which states that plaintiff was sent to segregation for the "security of the institution." The report further recites that it was reviewed by a hearing investigator on February 26, 1992.
 
 DISCUSSION
 
 29
 In determining the sufficiency of a complaint, the court must construe pleadings liberally. Lewis v. Local Union No. 100 of Laborers' Int'l Union of N. Am., 750 F.2d 1368, 1373 (7th Cir.1984); Scott v. O'Grady, 760 F.Supp. 1288, 1292 (N.D.Ill.1991). It is settled law that the allegations within a pro se complaint, however inartfully pled, are held to less stringent standards than formal pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520, (1972). "Such a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes, 449 U.S. at 10. As always, in ruling on a defendant's motion to dismiss, the court accepts as true the factual allegations of the complaint, see Hughes, 449 U.S. at 10 and will view the allegations in a light most favorable to the non-moving party. Wolfolk v. Rivera, 729 F.2d 1114, 1116 (7th Cir.1984).
 
 Personal Involvement
 
 30
 Addressing first defendants' contention that plaintiff has not sufficiently alleged the personal involvement of certain named defendants, this court notes that in order to recover damages under 42 U.S.C. Sec. 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir.1982); Johnson v. Lane, 596 F.Supp. 408, 409 (N.D.Ill.1984). While a defendant's direct participation is not required, an official satisfies the personal responsibility requirement of Sec. 1983 if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. Crowder, 687 F.2d at 1005. Unless public officials know about a problem and intend that it continue, they do not violate the Eighth Amendment. Pacelli v. deVito, 972 F.2d 871, 875 (7th Cir.1992).
 
 
 31
 In the case at bar, there are no allegations against Washington or Dusing of any kind in the entire complaint. Accordingly, plaintiff's complaint is dismissed as to these two defendants.
 
 
 32
 Similarly, there are no allegations against the remaining named defendants regarding plaintiff's claim for lack of medical care. Accordingly, this claim is dismissed as to defendants Humphrey, Housenga, Cavazos, Eubanks, Henson, Gardner and Reubin.
 
 
 33
 Plaintiff does allege that unknown medical personnel saw him and informed him that psychiatric services would be provided to him.
 
 Claims 1-4, 8
 
 34
 The Eighth Amendment requires the state to protect prisoners from each other. Duane v. Lane, 959 F.2d 673, 676 (7th Cir.1992). That duty, however, does not lead to absolute liability, but rather, prison officials are only liable for failure to prevent an injury inflicted upon one inmate by a fellow inmate where those officials display deliberate indifference to the inmate's constitutional rights. Duane, 959 F.2d at 676. "That is, the officials must 'want[ ] harm to come to the prisoner,' or, at least, must possess 'total unconcern for a prisoner's welfare' in the face of 'serious risks.' " Duane, 959 F.2d at 676 (quoting McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991). Therefore, "a prisoner must show '... recklessness' which ... entails 'actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.' " Duane, 959 F.2d at 676 (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985), cert. denied, 479 U.S. 816 (1986)). "A prisoner who merely establishes negligence but does not show either actual knowledge of the danger, or danger objectively so great that actual knowledge of the danger can be inferred, cannot prevail." Duane, 959 F.2d at 676.
 
 
 35
 Plaintiff has not met this burden. He has not alleged any facts which show that defendants possessed actual knowledge that inmate Ross would attempt to "sodomize" plaintiff or that inmate Ross was a "known sexual offender" who would endanger another male inmate. The actions alleged in the complaint do not amount to a deliberate indifference as defined in Duane v. Lane, 959 F.2d 673 (7th Cir.1992). Accordingly, Claims 1, 2 and 4 are dismissed.[1]
 
 
 36
 Claim 3 alleges nothing more than that prison officials could have taken more effective screening measures before placing inmates in the general population and assigning cells to them. In short, he challenges the reasonableness of their efforts. Mere negligence, however, does not satisfy the "deliberate indifference" standard. Duane, 959 F.2d at 677. Accordingly, Claim 3 is dismissed.
 
 
 37
 Similarly, Claim 8 alleges that defendants' lack of investigation violated his rights because, upon his release from segregation, he was again "confronted" by Ross, when they were placed on the same wing in another unit. Even assuming the bare assertion that he was "confronted" by Ross amounts to a violation of plaintiff's civil rights, such is nothing more than negligence and is not actionable under Sec. 1983. Accordingly, Claim 8 is also dismissed.
 
 Claims 6 and 7
 
 38
 Defendants contend that claims 6 and 7 must be dismissed because plaintiff has no constitutional right to remain in the general prison population pending the outcome of a disciplinary hearing. They argue that plaintiff was placed in segregation "as a temporary confinement measure" for the "security of the institution" because of his fight (two nights earlier) with Ross.
 
 
 39
 Plaintiff, on the other hand, contends that defendants' concerns about the "security of the institution" are pretextual, as plaintiff could have been sent to segregation immediately after the fight had occurred. Plaintiff further contends that his pre-hearing confinement in segregation was improper because there was no emergency situation constituting a threat to the security of the institution, nor did his presence create a "clear and present danger" to any other inmate or any correctional officials in the institution. The only suggestion in the record that immediate segregation was necessitated by emergency conditions is the disciplinary report, which was executed two nights subsequent to the incident involving plaintiff.
 
 
 40
 Defendants argue that the decision to remove an inmate from the general population is peculiarly within the discretion of prison officials, when necessary "in the interest of institutional security and safety," and cite Pardo v. Hosier, 946 F.2d 1278, 1282 (7th Cir.1991). They further argue that plaintiff has no protectible liberty interest in remaining in the general prison population.
 
 
 41
 The Due Process Clause, itself, does not itself create a liberty interest in remaining in the general population and out of temporary confinement. Hewitt v. Helms, 459 U.S. 460, 467-68 (1983); Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir.1990). State law, however, may be the basis for the creation of protectible liberty interests in the prison setting. Kentucky Dep't of Corrections v. Thompson, --- U.S. ----, 109 S.Ct. 1904, 1909 (1989); Woods, 903 F.2d at 1082. In Kentucky Dep't of Corrections v. Thompson, --- U.S. ----, 109 S.Ct. 1904, 1909 (1989), the Supreme Court stated that a state may create a protected liberty interest in a number of ways. The most common manner is by "establishing 'substantive predicates' to govern official decision-making, Hewitt v. Helms, 459 U.S., [sic] at 471-472 ..., and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Thompson, --- U.S. at ----, 109 S.Ct. at 1909.
 
 
 42
 The Seventh Circuit Court of Appeals, applying this criteria, has held that an inmate possesses no protectible liberty interest in continuing to reside in the general population by virtue of Administrative Regulation 804(c)(2).[2] See Pardo, 946 F.2d at 1283-84 (citing Woods, 903 F.2d at 1083). The court held that although A.R. 804(c)(2) uses mandatory language, as required in Hewitt, 459 U.S. at 471-72, it fails to require a certain result, as is required by Thompson, --- U.S. at ----, 109 S.Ct. at 1909. Pardo, 946 F.2d at 1282-84. Plaintiff has not cited any Illinois statute or regulation upon which he asserts a protectible liberty interest is created. Accordingly, plaintiff has failed to state a constitutional claim.
 
 CONCLUSION
 
 43
 For the aforementioned reasons, defendants' motion to dismiss is granted. The cause is hereby dismissed.
 
 
 44
 /s/ Philip G. Reinhard
 
 PHILIP G. REINHARD, JUDGE
 UNITED STATES DISTRICT COURT
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 While plaintiff includes several allegations that defendants, once apprised of the attempted rape, asked plaintiff to lock back up with Ross, it is clear from the record that plaintiff was not forced to do so. Had this been the case, plaintiff may arguably have a claim if some injury were sustained thereafter. However, as best this court can determine from the pleadings, plaintiff was not required to return to his cell with Ross after the incident
 
 
 [2]
 Administrative Regulation 804(c)(2), which defendants contend is applicable in the case at bar, provides as follows:
 The shift supervisor shall determine whether or not it is necessary to place the resident in temporary confinement status pending a disciplinary hearing. Such a decision shall be based on the degree of aggressiveness exhibited by the resident, the degree of threat posed to the safety and security of the institution, and/or the resident's need for safekeeping to protect him/her from injury.